UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------X

ART-OPTIC, LTD., : 08 CV 0327 (MGC)

Plaintiff, :

SAMUEL TOMASHOVER, MERYL TOMASHOVER and NEWLIGHT EYEWEAR, LLC., : :

Defendants. :

---------------------------------------------------X

# DEFENDANTS' PROPOSED CONCLUSIONS OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

Richard S. Schurin (RS0199)
GOTTLIEB, RACKMAN & REISMAN P.C.
270 Madison Avenue
New York, N.Y. 10016
(212) 684-3900

Counsel for Defendants *Samuel Tomashover, Meryl Tomashover and Newlight Eyewear, LLC*

New York, New York
February 7, 2008

Table of Contents

Page

I. THIS CASE SHOULD BE DISMISSSED OR STAYED IN FAVOR OF ARBITRATION 1

II. THE PRELIMINARY INJUNCTION STANDARD 3

III. PLAINTIFF'S 11 MONTH DELAY REBUTS IT'S CLAIM OF IRREPARABLE HARM 3

IV. PLAINTIFF IS NOT ENTITLE DTO ANY PRESUMPTION OF IRREPARABLE HARM 5

V. PLAINTIFF HAS ALTERNATIVE AND PREFERRED REMEDIES IN ISRAEL THAT IT CAN AND SHOULD PURSUE 7

VI. THE FIRST SALE/EXHAUSTION DOCTRINE IS A COMPLETE DEFENSE TO INFRINGEMENT 8

VII. PLAINTIFF EVIDENCE OF INFRINGEMENT IS EXCEEDINGLY WEAK 9

CONCLUSION 10

Table of Authorities

*Beacon Theatres, Inc.* v. *Westover*,
359 U.S. 500 (1959) 7

*Bear U.S.A. v. A.J. Sheepskin & Leather Outerwear, Inc.*,
909 F. Supp. 896 (S.D.N.Y. 1995) 3, 6

*Century Times Ltd. v. Interchron Ltd.*,
729 F. Supp. 366, 369 (S.D.N.Y. 1990) 5

*Citibank, N.A. v. Citytrust*,
756 F.2d 273 (2d Cir. 1985) 3, 6

*Comic Strip, Inc. v. Fox Television Stations, Inc.*,
710 F. Supp. 976, 981 (S.D.N.Y. 1989) 4

Page

*Gidatex, S.R.L. v. Campaniello Imports, Ltd.*,
13 F. Supp.2d 417 (S.D.N.Y. 998) 4

*Greenpoint Fin. Corp. v. The Sperry & Hutchinson Co., Inc.*,
116 F. Supp.2d 405 (S.D.N.Y. 2000) 4

*ImOn, Inc., v. ImaginOn, Inc.*,
90 F. Supp.2d 345 (S.D.N.Y. 2000) 4

*Kam Cheng v. Thea Dispeker*,
35 U.S.P.Q.2d 1493 (S.D.N.Y. 1995) 4

*Louis Vuitton Malletier v. Burlington Coat Factory Warehouse Corp.*,
426 F.3d 532 (2d Cir. 2005) 3

*Luxottica Group S.p.A. v. Bausch & Lomb, Inc.*,
160 F.Supp. 2d 545 (SDNY 2001) 8

*Magnet Comm., LLC v. Magnet Comm., Inc.*,
2001 U.S. Dist. LEXIS 14460 (S.D.N.Y. Sep. 7, 2001) 4

*Mathematica Policy Research, Inc. v. Addison-Wesley Publishing Co.*,
11 U.S.P.Q.2d 1392 (S.D.N.Y. 1989) 4

*Mazurek v.* Armstorong,
520 U.S. 968, 117 S.Ct. 1865 (1997) 3

*Moses H. Cone Mem'l Hosp. v. Mercury Construction Corp.*,
460 U.S. 1, 103 S.Ct. 927 (1983) 1

*Polymer Tech Corp. v. Mirman*,
975 F.2d 58 (2d Cir. 1992) 8

*PPG Indus., Inc. v. Webster Auto Parts, Inc.*,
128 F.3d 103 (2nd Cir. 1997) 1

*Qualtity King Dist. v. L'Anza Research Intl*,
523 US 135, 118 S.Ct. 1125 (1998) 8

*Sampson v. Murray*,
415 U.S. 61 (1974) 7

Page

*United States Fire Ins. Co. v. National Gypsum Co.*, 101 F.3d 813 (2d Cir. 1996) 1

Statutes

9 U.S.C. § 3 1

17 U.S.C.§ 109(a) 8

17 U.S.C.§ 410 6

## I. THIS CASE SHOULD BE DISMISSED OR STAYED IN FAVOR OF ARBITRATION

Before the Court addresses the issue of plaintiff's request for preliminary relief, it should first decide whether this dispute is referable to arbitration. Since as discussed herein, this dispute is subject to the parties written arbitration agreement, this case should be stayed or dismissed pursuant to the Federal Arbitration Act, and the plaintiff's motion for preliminary relief should be denied.

The Federal Arbitration Act, 9 U.S.C. § 3, provides:

> "If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration."

Federal policy strongly favors arbitration as an alternative means to dispute resolution. *PPG Indus., Inc. v. Webster Auto Parts, Inc.*, 128 F.3d 103 (2nd Cir. 1997). Under the Federal Arbitration Act, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay or a like defense to arbitrability. *Moses H. Cone Mem'l Hosp. v. Mercury Construction Corp.* 460 U.S. 1, 24-25, 103 S.Ct. 927 (1983); and *United States Fire Ins. Co. v. National Gypsum Co.*, 101 F.3d 813, 816 (2d Cir. 1996).

This dispute clearly falls under the parties' written arbitration clause. The Agreement provides that "[A]ny and all disputes arising between the parties out of or in connection with this agreement, its interpretation, performance or breach, shall be referred to a binding arbitration...". (See copy of Agreement attached as Exhibit G to Tomashover Aff.) Since, plaintiff has previously conceded the applicability of the parties' Agreement to its claims of infringement in the Israeli case, (See, ¶17 of plaintiff's Statement of Claim filed in Israel – Exhibit A to Schurin Decl. and ¶16 of plaintiff's Request for Ex Parte Permit filed in Israel – Exhibit C to Schurin Decl.), plaintiff should not be now heard to deny that these claims are referable to arbitration. Accordingly, plaintiff's claims supporting its request for preliminary relief are referable to arbitration. Therefore, plaintiff's motion for preliminary relief in this Court should be denied. Were it otherwise this Court would be deciding issues which the parties have previously agreed to arbitrate.

## II. THE PRELIMINARY INJUNCTION STANDARD

A preliminary injunction is an extraordinary remedy that should not be routinely granted. *Mazurek v.* Armstorong, 520 U.S. 968, 972, 117 S.Ct. 1865 (1997). Preliminary relief is available only where a plaintiff first establishes (1) irreparable harm in the absence of the injunction **and** (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor. *Louis Vuitton Malletier v. Burlington Coat Factory Warehouse Corp.*, 426 F.3d 532, 537 (2d Cir. 2005). As discussed herein, plaintiff has not met these standards.

## III. PLAINTIFF'S 11 MONTH DELAY REBUTS IT'S CLAIM OF IRREPERABLE HARM

The law in this Circuit is clear. A delay in seeking a preliminary injunction rebuts the presumption that there has been irreparable harm. *See Citibank, N.A. v. Citytrust*, 756 F.2d 273, 277 (2d Cir. 1985)(delay, despite knowledge of infringement, "suggests that there is, in fact, no irreparable injury.") (citation omitted); *Bear U.S.A. v. A.J. Sheepskin & Leather Outerwear, Inc.*, 909 F. Supp. 896 (S.D.N.Y. 1995)(denying preliminary injunction due to three to four month delay, notwithstanding finding of likelihood of confusion). The Second Circuit has explained its reasoning as follows:

> "Preliminary injunctions are generally granted under the theory that there is an urgent need for speedy action to protect the plaintiff's rights. Delay in seeking enforcement of those rights, however, tends to indicate at least a reduced need for such drastic

> speedy action. Significant delay in applying for injunctive relief in a trademark case tends to neutralize any presumption that infringement alone will cause irreparable harm pending trial, and such delay alone may justify denial of a preliminary injunction for trademark infringement."

*Citibank, N.A.*, 756 F.2d at 276 (citations omitted). The burden is then upon the movant to demonstrate with specificity why monetary damages will not suffice, *see id.*, a showing which plaintiff has not even sought to make.

It is clear that a delay of even three months or less is fatal to a claim for irreparable harm. *See Comic Strip, Inc. v. Fox Television Stations, Inc.*, 710 F. Supp. 976, 981 (S.D.N.Y. 1989) (denying preliminary injunction because three month delay negates showing of irreparable harm); *Mathematica Policy Research, Inc. v. Addison-Wesley Publishing Co.*, 11 U.S.P.Q.2d 1392 (S.D.N.Y. 1989) (denying preliminary injunction based upon three and a half month delay). Indeed, one court has stated that "courts typically decline to grant preliminary injunctions in the face of unexplained delays of more than two months." *Gidatex, S.R.L. v. Campaniello Imports, Ltd.*, 13 F. Supp.2d 417 (S.D.N.Y. 998). In *Citibank*, the delay was only ten weeks. *See also Magnet Comm., LLC v. Magnet Comm., Inc.*, No. 00 Civ. 5746, 2001 U.S. Dist. LEXIS 14460 (S.D.N.Y. Sep. 7, 2001) (twelve week delay); *Greenpoint Fin. Corp. v. The Sperry & Hutchinson Co., Inc.*, 116 F. Supp.2d 405 (S.D.N.Y. 2000) (four month delay); *ImOn, Inc., v. ImaginOn, Inc.*, 90 F. Supp.2d 345 (S.D.N.Y. 2000) (eighteen week delay); and *Kam Cheng v. Thea Dispeker*, 35 U.S.P.Q.2d 1493 (S.D.N.Y. 1995) (five month delay).

Here, eleven months have passed since plaintiff first learned of the defendants' alleged infringing acts in February 2007. (Bibring Aff. ¶ 17 and page 2 of plaintiff's memorandum). This delay is fatal to plaintiff's claim of irreparable harm. *See Century Times Ltd. v. Interchron Ltd.*, 729 F. Supp. 366, 369 (S.D.N.Y. 1990) (holding plaintiff's knowledge of alleged infringement four months before it moved for preliminary injunction precluded finding of irreparable injury). In sum, plaintiff's inaction for eleven months amply rebuts its claim of irreparable injury.

## IV. PLAINTIFF IS NOT ENTITLED TO ANY PRESUMPTION OF IRREPERABLE HARM

Plaintiff's claims of irreparable harm rely solely on presumptions that arise from a prima facie showing of copyright infringement and from a showing of likelihood of confusion on its unfair competition claims. (pages 12-13 of Plaintiff's Memorandum) However, as discussed below, the presumption of irreparable harm does not apply to the facts here.

First, as explained herein, plaintiff has not made a prima facie showing of copyright infringement because plaintiff erroneously relies upon certificates of registration for a presumption of ownership and validity. (page 14 of Plaintiff's Memorandum).

The certificates of registration upon which plaintiff relies were issued on December 14. 2007, more than five years after the January 1, 2002 date of publication of the covered works. (See copyright registrations attached as Exhibit 2 to Bibring Affidavit.) Since the publication date is more than five (5)

years prior to the effective date of the registrations, as a matter of law, plaintiff's certificates do not constitute prima facie evidence of the copyright and the facts stated in the certificates. 17 U.S.C.§ 410. Moreover, since plaintiff has not even bothered to offer any other facts or evidence relating to copyright ownership, plaintiff has not come close to meeting the basic requirements of a copyright infringement claim. Finally, the fact that plaintiff had not even applied to register such works until December of 2007, strongly suggests that there are serious questions regarding the merits of plaintiff's copyright claim.

Second, with respect to the presumption based on a likelihood of confusion on its unfair competition claims, plaintiff has not offered any admissible evidence that the RONIT FURST mark has acquired secondary meaning. The bare allegations of plaintiff's owner are not sufficient in this regard. Moreover, even if the Court were to find that plaintiff's mark is protectable, the law in this Circuit is clear that a delay in seeking a preliminary injunction rebuts the presumption that there has been irreparable harm, notwithstanding a showing of likelihood of confusion. *See Citibank, N.A. v. Citytrust*, 756 F.2d 273, 277 (2d Cir. 1985)(delay, despite knowledge of infringement, "suggests that there is, in fact, no irreparable injury.") (citation omitted); *Bear U.S.A. v. A.J. Sheepskin & Leather Outerwear, Inc.*, 909 F. Supp. 896 (S.D.N.Y. 1995)(denying preliminary injunction due to three to four month delay, notwithstanding finding of likelihood of confusion).

## V. PLAINTIFF HAS ALTERNATIVE AND PERFERRED REMEDIES IN ISRAEL THAT IT CAN AND SHOULD PURSUE

The United States Supreme Court has stated that the basis of injunctive relief in the federal courts has always been irreparable harm and "inadequacy of legal remedies." *Beacon Theatres, Inc.* v. *Westover*, 359 U.S. 500, 506-507 (1959). "The key word . . . is *irreparable*. Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *Sampson v. Murray*, 415 U.S. 61, 88 (1974), *quoting Virginia Petroleum Jobbers Assn.* v. *FPC*, 259 F.2d 921 (D.C. Cir. 1958). In this case, plaintiff is already a party to a litigation with defendants in Israel that will afford it the opportunity to obtain the same relief requested here based on the same acts alleged in this action. Indeed, in that Israeli action plaintiff conceded that it was able to obtain relief that would be enforceable in the United States. In that action, Mr. Bibring, plaintiff's principal, states "To the best of my knowledge and belief, my legal advisers were informed by consultation with lawyers in New York, than an injunction which may be given as requested by an Israeli Court can be enforced in the State of New York." (¶ 20 of Bibring Aff. filed in Israeli action attached as Exhibit D to Schurin Decl.). Accordingly, since plaintiff has other remedies available, it cannot make a showing of irreparable harm in this action.

## VI. THE FIRST SALE/EXHAUSTION DOCTRINE IS A COMPLETE DEFENSE TO INFRIGEMENT

As a general rule, trademark law does not reach the sale of genuine goods bearing a true mark even though the sale is not authorized by the mark holder. *Polymer tech Corp. v. Mirman*, 975 F.2d 58, 61-62 (2d Cir. 1992) Thus, a manufacturer who sells a branded product to a distributor without restriction cannot prevent the distributor from re-selling the branded goods. *Luxottica Group S.p.A. v. Bausch & Lomb, Inc.*, 160 F.Supp. 2d 545 (SDNY 2001) (Preliminary injunction denied based on first sale doctrine.)

The same rule applies for copyright claims, and is codified in the Copyright Act. Specifically, 17 U.S.C.§ 109(a) provides in relevant part:

> "Notwithstanding the provisions of Section 106(3), the owner of a particular copy or phonorecord lawfully made under this title, or any person authorized by such owner, is entitled without he authority of the copyright owner, to sell or otherwise dispose of the possession of that copy or phonorecord."

See also, *Qualtity King Dist. v. L'Anza Research Intl,* 523 US 135, 118 S.Ct. 1125 (1998).

In this case, all of the allegations of infringement allegedly occurring after February of 2007, i.e., after the facts alleged in the Shue affidavit, relate to plaintiff's complaint of defendants' sale of glasses bearing the RONIT FURST mark. Although plaintiff speculates that defendants are selling RONIT FURST glasses that were supplied by another source, plaintiff offers <u>no evidence</u> to support such speculation.

Defendants have the absolute right to re-sell the genuine RONIT FURST glasses that it purchased from plaintiff which still remain in its inventory. The burden is on the plaintiff to prove that such products are counterfeit. The unsupported testimony of Ehud Bibring and other interested and non-objective witnesses do not satisfy plaintiff's burden.

Again, defendants are not prohibited from selling genuine RONIT FURST glasses. The first sale/exhaustion doctrine allows defendants to advertise and sell such products. Moreover, the Israeli District Court in its Order refused plaintiff's request for a temporary injunction banning the defendants from competing with plaintiff. The Israeli Court held that paragraph 7 "The Non-Compete Clause" does not apply.[1] Since defendants are not now, and have never sold "counterfeit" glasses, plaintiff's motion should be denied.

## VII. PLAINTIFF'S EVIDENCE OF INFRINGEMENT IS EXCEEDINGLY WEAK

Plaintiff's moving papers are replete with unsupported allegations that defendants are selling "counterfeit" merchandise. Upon close examination of such "evidence" it is apparent that plaintiff has little or no real evidence of infringement.

The unsupported testimony of Ehud Bibring should be ignored. Mr. Bibring is an interested and non-objective witness. Mr. Bibring's testimony that defendants have "flooded the marketplace" with counterfeits is completely unsupported by any evidence whatsoever. Moreover, were the marketplace

---

[1] Defendants successfully argued in the Israeli case that any obligations imposed on it by the non-compete clause were discharged by plaintiff's breach in failing to grant defendants the right of first refusal and plaintiff's failure to purchase defendants' remaining inventory. (See Written Closing Arguments of Respondents – Exhibit E)

"flooded" with counterfeits you would think that plaintiff would be in a position to offer evidence of actual infringement, yet plaintiff offers none. Similarly, the testimony of plaintiff's current licensee that "he saw" counterfeits for sale, should be disregarded. Most probably, the products that he saw were genuine RONIT FURST glasses, not counterfeit. Moreover, with an admitted third party infringer previously identified, i.e., Hilco, the so-called "knock-off" glasses that these interested witnesses allegedly saw could have come form that source and not defendants.

Finally, the affidavit of Cathy Shue should not be considered trustworthy. Ms. Shue's testimony was originally offered in the Israeli case **and then withdrawn without explanation**. There is no reason to believe that Ms. Shue will testify in this case. Indeed, if she intended to testify, you would think that plaintiff would have offered a more current affidavit. Her affidavit, almost a year old, is stale, and unless plaintiff assures this Court that she will be testifying at the hearing, her testimony should be disregarded.

## CONCLUSION

For all of the reasons discussed herein, plaintiff motion for preliminary relief must be denied.

Respectfully submitted,
GOTTLIEB, RACKMAN & REISMAN

Richard S. Schurin (RS0199)
Counsel or Defendants

New York, New York
February 7, 2008