UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------X

ART-OPTIC, LTD.,                          :          08 CV 0327 (MGC)(KNF)
                                          :
             Plaintiff,                   :
                                          :
SAMUEL TOMASHOVER, MERYL                  :
TOMASHOVER and NEWLIGHT                   :
EYEWEAR, LLC.,                            :
                                          :
             Defendants.                  :
---------------------------------------------------X

## DECLARATION OF RICHARD S. SCHURIN

RICHARD S. SCHURIN makes the following statements under penalty of perjury:

1.      I am counsel for the defendants in the above captioned action, and offer this affidavit in opposition to plaintiff's motion to enforce the temporary injunction of the Israeli Court.

2.      In April 2007, plaintiff commenced an action against defendants Samuel and Meryl Tomashover in District Court in Tel Aviv- Jaffa, Israel (the "Israeli Action").

3.      At or about the same time, plaintiff requested that the Israeli Court issue a "Temporary Injunction." In its written request to the Israeli Court, a copy of which is annexed hereto as Exhibit A, plaintiff requested a temporary injunction which shall have effect "until final verdict is issued in the proceedings submitted to the Court simultaneously with this petition." Please see page 2 of Exhibit A.

4.    On October 9, 2007, the Israeli court issued a ruling denying in part and granting in part plaintiff's request for a temporary injunction, a copy of which is annexed hereto as Exhibit B.

5.    The Israel Action is currently pending and no final judgment or order has been granted.

6.    In January 2008, plaintiff commenced the instant action.  Shortly thereafter, plaintiff submitted to the Court an Order to Show Cause for Temporary Restraining Order, Preliminary Injunction, Seizure Order, Asset Restraining Order and Expedited Discovery Order.   Neither Plaintiff's Complaint nor its Order To Show Cause sought enforcement of the Temporary Injunction granted by the Israeli Court.

7.    On January 29, 2008, Plaintiff filed an Amended Complaint, a copy of which is annexed hereto as Exhibit C, which includes a new Tenth Cause of Action for "Enforcement of the Temporary Injunction Issued by the District Court of Tel Aviv-Jaffa.

8.    By letter to the Court dated January 31, 2008, a copy of which is annexed hereto as Exhibit D, Plaintiff requested that "enforcement of the temporary injunction should be considered as additional relief requested in its Order to Show Cause for Temporary Restraining Order, Preliminary Injunction and Additional Related Relief."

9.    Defendants submitted a letter to the Court dated February 1, 2008, a copy of which is annexed hereto as Exhibit E, stating reasons why plaintiff's request should be denied.  Plaintiff thereafter withdrew its request to have its

claim for enforcement of the Israeli Temporary Restraining Order as part of its

motion for preliminary relief.

    10.    Plaintiff has not submitted a memorandum of law or any supporting

affidavits in support of its motion for enforcement of the Ruling.

_____
Richard S. Schurin (RS 0199)

Dated: New York, New York
       February 28, 2008

# EXHIBIT A

At the District Court
In Tel-Aviv Jaffa

Tel-Aviv Jaffa District Court
A 1661/07 (BSA 9266/07)
Art Optic Ltd. Vs. Samuel Tomashover
(in the case of Art Optic Ltd. vs. Sam...
Date started: 30/04/07 legal procedure: standard
New case number: TA 47373-04/07

In the matter:       **Art-Optic Ltd.**
                     Legally registered company in Israel (private company 513191148)
                     Of Hazamir St. 61, Kiryat Ono 55507
                     By its representatives Adv. Uriel Ganiher and/or Yael Amir Lev-Ari
                     And/or Yaron Raz and/or Nechami Mayzelish
                     Of David Hamelech Blvd. 12 Tel-Aviv 64953
                     Tel: 03-6968965  Fax: 03-6969781

                                                            **The Petitioner**

                              **- Versus -**

                     1. **Mr. Samuel Tomashover**
                     2. **Mrs. Meryl Tomashover**

                     Sales agents whose address is –
                     444 East 75th Street, Suite 17C,
                     New York 10021, New York, USA

                                                            **The Respondents**


# REQUEST IN WRITING FOR ISSUING A TEMPORARY INJUNCTION AT THE PRESENCE OF ONE PARTY

Request is hereby submitted to the honorable Court to issue a temporary injunction which will prohibit the respondents or either of them, directly, indirectly, or through those who act on their behalf, to do each one or more of the following deeds:

Not to be involved in any way in the production, marketing, sales promotion, distribution and sale of hand painted frames for eyeglasses, as well as to prohibit the respondents to sell, produce, or to present anywhere in the world eyeglasses' frames

ꞏ that bear the name "Ronit Furst", "Op-Art", or "Art Optic" or frames that feigned to be produced or designed by the petitioner. This shall be so until final verdict is issued in the proceedings submitted to the Court simultaneously with this petition.

This petition is submitted together with the attached request for ex parte permit outside jurisdiction, according to paragraph 500 to the civil procedure regulations.

## Reasons for the request:

1.     The petitioner is a private company registered in Israel, which among other, manufactures and distributes plastic eyeglasses' frames that are hand painted. The petitioner is a family company owned by Mrs. Lea Bibring that exclusively manufactures the brand "Ronit Furst" frames. Ronit Furst herself is the designer of the frames. The petitioner manages her business affairs in Israel but exports her products to different countries in Europe as well as to the USA. The petitioner owns the rights to use the brand "Ronit Furst" and has the copyrights to the designs, samples and drawings designed by Mrs. Ronit Furst.

2.     Respondents 1 and 2 (the "respondents") are sales agents and distributors. In 2004 they were unemployed and through a relative of theirs they contacted the petitioner with an offer to distribute her products in the USA.

## The Product

3.     The product produced by the petitioner (the "Product") is unique. The petitioner purchases, through a special order, transparent plastic frames that are produced according to the specifications of the petitioner Mrs. Ronit Furst designs patterns, drawings and decorations that are painted on the frames according to her choice. It should be emphasized that the designs are originals, created by Mrs. Furst.

3

Artists that are working for the petitioner make precision copies, and under the supervision of Mrs. Furst, those samples and drawings are painted on all the frames. The frames are delivered to a factory where they undergo a coating process that affixes the painting on the surface of the frame. Each frame bears the brand name "Ronit Furst" as well as the index number which likewise is **written by hand on the inside of the right hand temple** of the frame. Picture of the index and in it the number of frames taken out of all the products of the plaintiff is attached to the Statement of Claim and marked as **appendix A'**

4.     The eyeglass brand "Ronit Furst" exists commercially since 2002, the year when the petitioner was established. During this time it gained reputation for the originality of the models, their beauty and quality, where the frames bearing the brand are sold at selected optical shops.

## The Association

5.     In 2004, when the products of the petitioner were already sold in a number of shops in the USA, the petitioner was approached by one of the products' distributors in Israel, Mr. David Goldwasser, who told that his relatives, the respondents, are experienced marketing people but unemployed, and proposed to the petitioner that the respondents, together with himself, shall receive the distribution rights for the product in the USA. The petitioner agreed and a distribution contract was signed between the parties. A correct copy of the distribution contract is attached to the Claim as a part of it thereof and marked as **appendix B'**. Shortly afterward Mr. Goldwasser withdrew, with the consent of the parties, from his share in the deal, and the respondents remain the distributors of the product in the USA according to the contract.

6.     The contract, appendix B', was signed for a period of 13 months starting December 1st, 2005. The petitioner shall rely on appendix B' in full. However, for the convenience of the Court 2 paragraphs shall be introduced hereof, which are needed

4

; in order to understand the matter. Paragraphs 7, 8, of the contract establish the following (translated from English for convenience only, the prevailing version is the source, the term "the buyer" refers to the respondents, the term "the producer" refers to the petitioner).

**7. Non-Competition**

During the term of this agreement and for a period of 2 years thereafter, the Buyer shall not be involved in any way, wether directly or indirectly, wether for consideration or not, in manufacturing, marketing, selling, promoting, or distributing- hand painted frames for glasses of any kind (made of Plastic or Metal) Worldwide that resemble and/or compete with the Product.

**8.1** It is hereby specifically acknowledged by the Buyer that it does not have, nor will it claim to have any proprietary rights, trade rights or copyrights with respect to the Product.

**8.2** The Buyer will promote the product only under the Producer's registered tradomarks, trade names, logos, labels and other indications of source or origin as may be determined by the Producer from time to time. Currently, the Producer's trademarks and/or trade names consist of : "OPART",

"ART OPTIC", "RONIT FURST".

## The conduct of the parties and termination of the contract

7.     During the course of the contract the respondents have breached it and were in arrears for paying for the products that were supplied to them. Since the contract was valid for one year only, the petitioner took no action against the respondents. Yet, the petitioner demanded that the infringements be rectified, and also made it clear to the respondents that the contract with them will not be renewed. Indeed, on December 30th, 2005 the period covered by the contract has ended. To be sure, from that date onward the petitioner continued to supply products to the respondents, however, the contract between the parties was changed in such that the respondents are no longer entitled to exclusivity in marketing the products in the USA. The aforesaid agreement was expressed in exchanged messages via electronic mail (e-mail).

5

8.    The respondents continued their infringements also after working under the current framework, hence the petitioner was forced to inform the respondents that the contract is definitely terminated.

9.    The respondents, on account of their attitude and due to the fact that the association period of the contract has expired, could no longer continue and sell the petitioner's frames but wanted to enjoy the reputation which is the fruit of her labor, decided to employ fraud and deceit to benefit on the petitioner's account. About a month before the time of the Claim the petitioner found out that the respondents found a supplier, probably in a South American country, which produces a precise copy of the petitioner's frames, including the caption "Ronit Furst" which is on each frame. Those frames, in which the petitioner has no part in their production, are marketed by the respondents by falsely claiming that the petitioner is the producer and they the respondents are her agents.

It should be pointed out that finding a supplier, learning the designs and manufacturing process and preparing a stock of frames, is a prolonged process which clearly establishes that the respondents made preparations for the forgery and copying deeds long time in coming, and only waited for the moment they could start the illicit deeds.

10.    The defendants approached different optician shops in the USA, from California to New York, they presented them with the fake frames, claiming that they are produced by the petitioner, received orders and even supplied the product.

Among others, the respondents and/or either one of them, solicited the following business owners:

10.1. Mrs. Cathy Shue, owner of optical goods in Monterey, California. The respondents came to her with a proposal to make in her shop a special sale of the petitioner's frames to the shop's selected clientele. On 03/10/07 they have indeed

6

appeared at the shop, equipped with the plaintiff's samples and publicity material, and presented themselves as the petitioner's agents. The shop's clients ordered frames, and after the respondents were given the list of orders they supplied the shop with the frames. The frames look exactly like the frames that are produced by the petitioner, and only an expert's eye can discern the minute differences. Attached to this Claim is a photo of part of the fake frames that were sold to Mrs. Shue, marked as **appendix C'**. Also attached is Mrs.Shue's affidavit which confirms the above said , marked as **appendix C'.1**.

The frames themselves are at the undersigned advocate's office and they shall be presented to the Court.

10.2. "Braham Powell", optical goods in Alexandria, Virginia. On 03/20/07 Mr.Itamar Furst, a family member of Mrs. Ronit Furst took a stroll in this city and observed many "Ronit Furst" frames displayed for sale in the shop. He entered the shop, which had the petitioner's publicity material including a photo of Mrs. Ronit Furst, he was told that the frames are selling very well, at a price of $225 each. He was told that the respondents came to the shop and presented themselves as Ronit Furst agents, they told that Ronit Furst has transferred the production from Israel. This made the man suspicious and he asked to examine the frames supplied by the respondents. Upon his examination he discovered that the frames are identical to the original frames, including the brand name "Ronit Furst" that appears at the side of the frame. Only after meticulous examination, and by being an engineer involved in the production process, he discovered that the frames are fake. That same person also said that he saw "Ronit Furst" frames sold in another shop at that city. Those too were not produced by the petitioner.

Mr.Itamar Furst affidavit is attached to the request, marked as **appendix D'**.

11.    In addition to that, at the end of March 2007 an important and one of the largest exhibitions in the USA for optical goods took place in New York. In this exhibition the respondents made a stand laden with petitioner's publicity material (which included, wall posters, wallpapers and colorful shelves by the design of the petitioner

and even brochures of the petitioner that he received from the petitioner for previous exhibitions) that feigns to be a stand of the petitioner, in which the respondents offered for sale eyeglasses frames that feigns to be of the petitioner, yet in effect they are fake and the petitioner had never produced them. Mrs.Ruth Domber who was present in the abovementioned exhibition, confirms in her affidavit the above said. Her affidavit and 2 photos of the stand, which were taken by Mrs.Domber, are attached hereof and marked as **appendix E', E'1.**

Furthermore, the respondents published at the official website of the exhibition that they market "Ronit Furst" hand painted frames.

12.     The respondents made known to optical shop owners in the USA that they intend to present "Ronit Furst" frames in trade fairs, including the optical fair MIDO in Milan at the beginning of May 2007. This is the largest well-known international fair in the optical industry as well as in a fair that is to take place in Chicago in May 2007. This points to the intention of the respondents to market the imitations worldwide.

13.     The abovementioned behavior of the respondents constitutes infringement of paragraph 7 of the Distribution Contract, appendix B'. Furthermore, it constitutes copyrights violation of the petitioner in the design of the frames, and it constitutes violation of paragraphs 1, 2, 3, and 6 of the Commercial Prejudice Law 1999.

14.  For the abovementioned prejudices and for the fear of irreversible damage that will be caused to the petitioner if continuation of the abovementioned prejudices is not stopped without further delay, the petitioner is entitled to this temporary injunction until the petition submitted by the petitioner is heard. Should this injunction not be granted immediately and be enforced in the State of New York and as may be necessary also in Italy and other countries, all the rights of the petitioner squandered, as well as wasting the creativity and talent that were invested in the design of the product, and the reputation gained by the petitioner, whereas the respondents will benefit on her account. Furthermore, should the respondents be given the time for prolonged deliberation before

8

the injunction is issued, the objective of the injunction will be in vain as the respondents will be able to transfer large quantities of counterfeit products to clients throughout the USA and Europe.

15. After consultation with an attorney who specializes in intellectual property in New York, I have been informed that an order granted by this honourable court may be enforced in the state of New York.

16. It is legitimate and just to accede to the petition.

Adv. Uriel Ganihar
For the plaintiff
(-)

# EXHIBIT B

Form No. 312/2007

מסי רף 312/2007

## CERTIFICATION OF TRANSLATION

**אישור תרגום**

I the undersigned Advocate
**Reuven Ben-Ari**
Notary at 14, Massaryk blvd. Tel-Aviv
Israel hereby declare that I am well
acquainted with the Hebrew and English
languages and that the document attached to
this certification and marked "A" is a
correct translation into   English of the
original document drawn up in the Hebrew
language, which has been produced to me,
and a copy of which is also attached
herewith and marked "B".

אני החיימ עויד **ראובן בן-ארי**
נוטריון ב- שדי מסריק 14, תל-אביב מצהיר
בזה, כי אני שולט היטב בשפות העברית
והאנגלית וכי המסמך המצורף לאישור זה
והמסומן "A" הוא תרגום מדוייק לאנגלית של
המסמך מקורי הערוך בשפה העברית שהוצג
לפני ואשר העתק צילומי שלו  מצורף גם הוא
לאישורי זה ומסומן "B"

In witness whereof I certify the correctness
of the said translation by my signature and
seal.

ולראיה אני מאשר את דיוק התרגום האמור
בחתימת ידי ובחותמי.

This 10th October 2007
Notary's fee 1,698.- NIS. including V.A.T

היום 10.10.07
שכרי בסך -. 1698 שייח כולל מ.ע.מ. נדרש.



Notary's Seal and Signature



חותם הנוטריון



**APOSTILLE**
(Convention de la Haye du 5 October 1961)

1. **STATE OF ISRAEL**
   This public document

2. Has been signed by
   Advocate ...........................

3. acting in capacity of Notary.

4. bears the seal/stamp of the above Notary

**Certified**

5. at the Magistrates' Court, Tel-Aviv-Yafo

6. Date .............................

7. By an official appointed by Minister of
   Justice under the Notaries Law, 1976.

8. Serial number ...........................

9. Seal/Stamp ...........................

10. Signature ...........................

Reuven Ben-Ari    אובן בן-ארי

1. מדינת ישראל
   מסמך ציבורי זה

2. נחתם בידי
   ־עו״ד...

3. המכהן בתור נוטריון.

4. נושא את החותם/החתומת של הנוטריון חנ״ל

**אושר**

5. בבית המשפט השלום תל-אביב-יפו

6. ביום ...

7. על ידי מי שמונה בידי שר המשפטים לפי
   חוק הנוטריונים, התשל״ו-1976.

8. מס׳ סידורי ...

9. החותם/החתומת ...

10. חתימה ...

# State of Israel

# The Courts of Law

At the Tel-Aviv – Jaffa District Court          Civil motion      009267/07

Principal Case   A  001661/07

Before His Honor Judge Yehuda Zaft  - Vice President

In the matter of        ART – Optic Ltd.

Represented by Counsel, advocate  Uriel Ganiar        <u>The Petitioner</u>

V e r s u s

1.     Samuel Tomshover

2.     Merill Tomshover

Represented by Counsel, advocate Arie Lahav-Levy      <u>The Respondents</u>

## <u>Ruling</u>

### <u>Background</u>

On October 1, 2004 the Petitioner, engaged in the production and marketing of spectacle frames made of plastic, decorated by handwork ("the decorated frames") made a distribution agreement with the respondents whereby the respondents were to serve as sole distributors of the decorated frames in the USA in the period between December 1, 2004 and December 31, 2005 ((hereinafter: the distribution agreement).

A dispute about the distribution of the decorated framers erupted between the petitioner and the respondents and from 2006 onward the petitioner ceased to provide the respondents with decorated frames.

According to the petitioner, the respondents are engaged in the USA in the marketing of spectacle frames that constitute an imitation of the decorated frames.



In civil file 1661/07 the petitioner sought a declaratory ruling banning the respondents from producing or marketing frames that are similar to or competing with the decorated frames over a period of two years from September 30, 2006 – the final date on which the petitioner supplied the respondents with decorated spectacles. The petitioner also applied for a ruling banning the respondents from making and/or selling frames bearing the name "Ronit Furst", "Op-Art", or "Art Optic", or purporting to be frames manufactured by the petitioner and/or designed by Ronit Furst and/or being passed off as distributors and/or representatives of the petitioner.

In the petition before me, the petitioner requests a temporary injunction banning the respondents from manufacturing and/or marketing and/or distributing and/or selling spectacle frames painted by hand, and also from making and/or selling and/or displaying anywhere in the world spectacle frames bearing the name "Ronit Furst", "Op-Art", or "Art Optic" or frames purporting to be made or designed by the petitioner.

## Discussion

A.    The petitioner bases its right to the sought relief on the provisions of clause 7 of the distribution agreement, which bans the respondents from engaging in production and/or marketing of hand-painted spectacle frames resembling the decorated frames and/or competing with them during the currency of the agreement for a period of two years thereafter. Clause 7 of the distribution agreement (Appendix B) stipulates:

*During the term of this agreement and for a period of 2 years thereafter, the Buyer shall not be involved in any way, whether directly or indirectly, whether for consideration or not, in manufacturing*

3

*marketing, selling, promoting or distributing hand painted frames for glasses of any kind (made of plastic or metal) worldwide that resemble and/or compete with the product".*

According to the petitioner, the period of restricted competition is to be counted from December 31, 2006 because according to the respondents' version they served till then as sole agents of the petitioner.

Owing to the grant of a two years sole distribution rights in the USA to the respondents it is possible that their restriction of business constitutes no disproportionate impairment of their right of conducting business. Even in this case, however, the restriction period expressly established in the agreement should not be extended. Since it is established that the distribution agreement is to be valid till December 31, 2005 (clause 3 of the agreement), the restriction period is to be counted for two years starting on that date.

Moreover, the delivery of decorated frames to the respondents in the period after December 31, 2005 took place in conditions different from those established in the distribution agreement and during that period the respondents were denied the exclusivity of distribution in the USA (article 10 of the affidavit by Ehud Bibering of April 26, 2007).

B.    The petitioner is applying for a temporary injunction banning the respondents from competing with it for an indefinite period whereas it was entitled at most to prevent the respondents from marketing competing glasses with decorated frames till December 31, 2007 Therefore, I see no justification for accepting this request, which was intended to prevent the respondents from competing with the petitioner.



C.    It follows from the affidavit by Ehud Bibering that on March 10, 2007 the
      respondents displayed in the optical store in Monterey spectacle frames
      similar to the decorated frames (article 10.1 of the affidavit). This statement
      was given on the basis of the version of Kathy Show, owner of the Monterey
      store, who even handed over to the petitioner frames purchased by her from
      the respondents.

Samuel Tomshover testified as follows (p. 3 of the protocol of
September 20, 2007:

*Q.    About the deposition by Kathy Show, did you appear in her place
       and sell her frames?*

*A.    Yes.*

The testimony of Samuel Tomshover supports the version of Kathy Shaw, as given
to Ehud. Bibering.

Comparison between the frames sold to Kathy Shaw by the respondents and the
decorated frames (Exhibit 2) reveals that the frames sold by the respondents to
Kathy Shaw comprise decorative elements and model signs identical to those
existing in the decorated frames, among other things they contained the *Ronit First*
sign, which characterizes the decorated frames. Therefore it appears prima facie
that there is a misleading similareity between the frames sold by the respondents to
Kathy Shaw and the decorated frames.

D.    The respondents agreed in their reply to obtain a temporary injunction
      banning them from distributing  forged frames (clause 90 of the
      respondents' reply of July 22, 2007), and on these grounds I think it



would be justified to hand down a temporary injunction banning the
respondents from further marketing of frames that constitute a forgery of
the decorated ones.

## Conclusion

A temporary injunction is hereby granted, banning the respondents and/or any
person on their behalf from making and/or marketing and/or selling spectacle
frames that constitute an immitation of the decorated frames made by the petitioner
with the inscription "Ronit Furst", "Op-Art", or "Art Optic" as shown in Appendix
A of the Petition.

The validity of this temporary injunction is conditional upon the deposition of a
personal undertaking pursuant to Regulation 365(B) of the Civil Procedure Regulations,
5744-1984.

In view of the respondents' consent to the said order I see no need for making the
temporary injunction conditional upon the deposition of a guarantee.

The respondents shall jointly and severally pay the petitioner the costs of the
petition and attorney fee in the sum of NIS 20,000.



The court secretariat shall issue a copy of this ruling to the counsel of the parties by
fax

*Issued on October 9, 2007, in Chambers.*

( - )
*Judge Yehuda Zatt, Vice President*



**EXHIBIT C**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X

ART-OPTIC, LTD.,                                    :
                                                    :
                        Plaintiff,                  :
                                                    :
            v.                                      :     **AMENDED COMPLAINT**
                                                    :     08cv0327 (MGC)(KNF)
SAMUEL TOMASHOVER,                                  :     JURY TRIAL DEMANDED
MERYL TOMASHOVER, and                               :
NEWLIGHT EYEWEAR, L.L.C.,                           :
                                                    :
                        Defendants.                 :
-----------------------------------------------------------------X

Plaintiff Art-Optic, Ltd. ("Art-Optic" or "Plaintiff"), by its attorneys, Shiboleth, Yisraeli,

Roberts & Zisman LLP, alleges as follows:

## PRELIMINARY STATEMENT

1.      Art-Optic, the manufacturer and seller of the "Ronit Furst" brand of unique hand-

painted eyewear and accompanying eyeglass cases, brings this action against Samuel and Meryl

Tomashover (the "Tomashovers") and their company Newlight Eyewear, L.L.C. ("Newlight")

(collectively "Defendants") for their blatant and willful production and marketing of counterfeit

"Ronit Furst" eyewear and cases.

2.      Since 2002, Art-Optic, a private family-owned company based in Israel, has been

continuously producing and selling the Ronit Furst brand of hand-painted eyewear and cases.

Art-Optic, which was founded by Ehud Bibring and owned by Ehud's mother, Lea Bibring, has

expended substantial resources to work with Ehud Bibring's wife, the artist Ronit Furst

("Furst"), to design, manufacture, market and sell its eyewear. All of the designs are created by

Furst and they, along with the design and creation of the marketing materials, belong to Art-

Optic. Art-Optic has built up a brand and reputation for manufacturing and selling the Ronit

1

Furst brand of hand-painted eyewear and cases in New York, throughout the United States, Europe, Israel and South Africa.

3.    In 2004, Art-Optic entered into an agreement with the Tomashovers to purchase and distribute the Ronit Furst brand of eyewear in the United States. The Tomashovers failed to pay for the eyewear under the Agreement. Their blatant failure to adhere to the Agreement combined with their abusive and unprofessional behavior toward Art-Optic led to friction between the parties.

4.    Upon information and belief, the Tomashovers, in their desire to destroy Art-Optic, began manufacturing counterfeit Ronit Furst hand-painted eyewear in or about March 2006. In December 2006, Art-Optic terminated its relationship with the Tomashovers. Despite the explicit termination of their business relationship with Art-Optic, the Tomashovers immediately began to market themselves as legitimate representatives of Art-Optic and sellers of Ronit Furst eyewear at exhibitions and to optical stores so they could sell their counterfeit goods.

5.    The Tomashovers' eyewear are virtually exact replicas of the Ronit Furst frames. They have copied the unique hand-painted designs and frame shape, and they have even printed the "Ronit Furst" logo on the side of the frames. The Tomashovers have also copied the distinctive design of the Ronit Furst eyeglass cases. In June 2007, the Tomashovers established Newlight as a corporate vehicle for their counterfeiting activities.

6.    Despite an October 2007 Israeli court temporary injunction which prohibits the Tomashovers from manufacturing and selling Ronit Furst eyewear, Defendants continue to manufacture and market counterfeit Ronit Furst eyewear and cases in New York and elsewhere in the United States.

2

7.     The Defendants' egregious counterfeiting, manufacturing and marketing of Art-Optic's Ronit Furst eyewear and cases has damaged and continues to damage Art-Optic economically every day. Thus, Art-Optic asserts the following causes of action for:

(i)     Copyright Infringement pursuant to the Copyright Act of 1976, 17 U.S.C. § 101, *et seq.*;

(ii)    False Designations of Origin, False Representations and False Advertising, Section 43 of the Lanham Act; 15 U.S.C. § 1125(a);

(iii)   Common Law Trademark Infringement;

(iv)    False Designations of Origin, False Representations and False Advertising, Section 43 of the Lanham Act, 15 U.S.C. § 1125(a) – Trade Dress;

(v)     Common Law Trade Dress Infringement;

(vi)    False Designations of Origin, False Representations and False Advertising, Section 43 of the Lanham Act, 15 U.S.C. § 1125(b) - False Advertising;

(vii)   False Advertising - N.Y. Gen. Bus. Law § 350;

(viii)  Unfair Competition by Misappropriation;

(ix)    Tortious Interference with Prospective Economic Advantage; and

(x)     Enforcement of the Temporary Injunction issued by the District Court of Tel Aviv-Jaffa, Israel on October 9, 2007.

8.     Art-Optic seeks a temporary restraining order, preliminary injunction and permanent injunction, as well as enforcement of the Temporary Injunction issued in Israel, to prevent the daily injury inflicted by Defendants upon Art-Optic's business, reputation and goodwill. Art-Optic also seeks damages in the total amount of $10,000,000, statutory

3

damages, actual, punitive, treble and exemplary damages, disgorgement, attorneys' fees, costs and disbursements, and pre- and post-judgment interest.

## JURISDICTION AND VENUE

9.     This Court has federal question subject matter jurisdiction over this action pursuant to 28 U.S.C.A. § 1331 (federal question), 28 U.S.C.A. § 1338 (jurisdiction to adjudicate claims of federal trademark and copyright infringement and accompanying claim of unfair competition), and 15 U.S.C.A. § 1121 (original jurisdiction over Lanham Act claims).

10.     Pursuant to 28 U.S.C.A. § 1332(a), this Court has diversity jurisdiction over this action because the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and is between Plaintiff, a citizen of the State of Israel, and Defendants, citizens of New York within the meaning of the statute.

11.     Pursuant to 28 U.S.C.A. § 1367(a), this court has supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

12.     Venue is proper in this district under 28 U.S.C.A. § 1391 because a substantial part of the events, acts and omissions giving rise to the claims asserted here occurred in this judicial district and defendants are subject to personal jurisdiction within this district.

## PARTIES

13.     Plaintiff Art-Optic is a corporation based in the State of Israel with offices at Hazamir Street 61, Kiryat Ono, Israel.

14.     Defendant Samuel Tomashover ("S. Tomashover") is an individual whose address is 444 East 75th Street, Suite 17C, New York, New York.

4

15.    Defendant Meryl Tomashover is an individual whose address is 444 East 75th Street, Suite 17C, New York, New York.

16.    Defendant Newlight Eyewear L.L.C. is a New York limited liability company whose address is 444 East 75th Street, Suite 17C, New York, New York

## FACTS

### I.    Prior Business History

17.    Art-Optic was established in Israel in 2002, at which time it began manufacturing and selling the "Ronit Furst" brand of unique hand-painted eyewear designed and created by artist Ronit Furst ("Furst").    Each pair of glasses is sold with a distinctively designed case. Since 2002, Art-Optic has been selling the Ronit Furst brand of eyewear in optical stores in New York and throughout the United States, Europe, Israel and South Africa.    Ronit Furst eyewear has garnered an international reputation for its unique design and quality products.

18.    In 2004, Art-Optic and the Tomashovers entered into an exclusive Sales and Distribution Agreement ("Agreement").    The Agreement provided that the Tomashovers had the exclusive right to purchase and sell Ronit Furst eyewear in the United States except for two customers, a small distributor in the Rochester, New York area, and an optical shop in Manhattan. The Agreement was originally signed between Art-Optic, the Tomashovers and David Goldwasser, a relative of the Tomashovers.    Goldwasser subsequently withdrew from the Agreement.

19.    The term of the Agreement was for thirteen months, from December 1, 2004 until December 31, 2005.

5

20.    During the term of the Agreement, the Tomashovers breached the terms by failing to pay for products supplied to them by Art-Optic.  The Agreement was not renewed after December 31, 2005.

21.    Art-Optic continued to allow the Tomashovers to sell Ronit Furst eyewear in the United States on a non-exclusive basis.

22.    Paragraph seven of the Agreement contains the following non-competition clause:

> During the term of this agreement and for a period of 2 years thereafter, the Buyer shall not be involved in any way, wether [sic] directly or indirectly, wether [sic] for consideration or not, in manufacturing, marketing, selling, promoting, or distributing hand painted frames for glasses of any kind (made of Plastic or Metal) Worldwide that resemble and/or compete with the Product.

Thus, the non-competition clause extends through December 31, 2007.

23.    In December 2006, Art-Optic, through its counsel in Israel, informed the Tomashovers that they were no longer authorized to sell Ronit Furst eyewear and they could not hold themselves out to the public as representatives of Art-Optic and Furst, or as sellers of Ronit Furst eyewear.

## II.    Defendants Manufacture, Market and Sell Counterfeit Ronit Furst Eyewear and Cases

24.    Upon information and belief, the Tomashovers began to produce virtually exact replicas of Art-Optic's Ronit Furst eyewear in or about March 2006 in retaliation for the deterioration of their relationship with Art-Optic.  Specifically, the Tomashovers sought out a supplier and manufacturer that would replicate Ronit Furst's unique hand-painted eyewear designs, including placing the plaintiff's designer's name "Ronit Furst" on the left temple of each frame and on the left lens.  In addition, the Tomashovers also began to produce eyeglass

6

cases that were the same unique shape and design as the glasses cases manufactured by Art-Optic to hold the Ronit Furst glasses.

25.    The Tomashovers also continued to use the marketing supplies provided by Art-Optic after the term of the Agreement ended in December 2005 as part of their deliberate scheme to hold themselves out as authorized sellers to optical stores in New York and throughout the United States.

26.    Upon information and belief, in or about December 2006, the Tomashovers approached numerous optical stores in New York and throughout the United States and marketed and sold to these stores their counterfeit eyewear in eyeglass cases that they claimed were authentic Ronit Furst eyewear manufactured by Art-Optic.

27.    In March 2007, the Tomashovers managed a booth promoting "Ronit Furst" eyewear in New York at one of the largest exhibitions for optical goods in the United States. The Tomashovers used marketing material, including posters, wallpapers, brochures and colorful shelving which had been designed and provided to them by Art-Optic.

28.    During the exhibition, the Tomashovers were selling eyewear which were produced to look identical to Art-Optic's unique "Ronit Furst" eyewear brand and falsely marketed their fake eyewear as Ronit Furst eyewear produced by Art-Optic.

29.    The Tomashovers advertised their appearance on the exhibition website as an appearance by "Ronit Furst" even through neither Art-Optic nor Furst attended the show.

30.    In addition to the exhibition in New York, the Tomashovers in 2007 also attended an exhibition in Chicago and Las Vegas utilizing the same scheme.

7

31.    On June 8, 2007, the Tomashovers incorporated "Newlight Eyewear L.L.C." in New York with their home address as the address of the company. Thus, the Tomashovers have established a limited liability company to front their counterfeiting operation.

### III.    S. Tomashover Improperly Applies to Trademark the "Ronit Furst" Name

32.    On or about April 30, 2007, S. Tomashover applied for a trademark registration for the mark RONIT FURST (Serial No. 77169467). According to the application posted on the United States Patent and Trademark Office website, S. Tomashover listed himself as the owner. S. Tomashover's application for the trademark protection of Furst's name is a violation of Trademark Act Section 2(c), 15 U.S.C. § 1052(c); TMEP §§ 813 and 1206 because S. Tomashover did not receive signed, written consent from Furst to apply to trademark her name. Furthermore, S. Tomashover's application to trademark of Furst's name was also in direct violation of paragraph 8.1 of the Agreement: "It is hereby specifically acknowledged by the buyer that it does not have, nor will it claim to have any proprietary rights, trade rights or copyrights with respect to the Product."

### IV.    Art-Optic Obtains an Injunction in Israel Against the Tomashovers in September 2007

33.    In April 2007, Art-Optic sued the Tomashovers in Tel Aviv District Court in the State of Israel (Civil File 1661/07). On October 9, 2007, the District Court issued a temporary injunction barring the defendants from "making and/or marketing and/or selling spectacle frames that constitute an imitation of the decorated frames made by the [plaintiff] with the inscription Ronit First [sic] . . ." In addition, a judgment was entered against the Tomashovers in the amount of 20,000 NIS (New Israeli Shekels) for attorney's fees.

V.    **Defendants Continue to Manufacture,**
      **Market and Sell Counterfeit Ronit Furst Eyewear and Cases**

34.    Despite the temporary injunction and judgment, Defendants continue to: (1) manufacture eyewear that is deliberately produced to look exactly like Art-Optic's Ronit Furst eyewear and cases, (2) hold themselves out as authentic Ronit Furst eyewear dealers, and (3) palm off their counterfeit eyewear and cases as Ronit Furst eyewear and cases to the public.

35.    Defendants' blatant and deliberate scheme to infringe Art-Optic's unique Ronit Furst line of hand-painted eyewear and cases has damaged Art-Optic's business and sales.

VI.    **Defendants are Threatening Art-Optic's Current Distributors and Representatives**

36.    In May 2007, Art-Optic contracted a new distributor, Brintech. Defendants have engaged in a campaign to identify Brintech's representatives in New York and throughout the United States. Once identified, S. Tomashover has verbally threatened and intimidated Brintech and its representatives in the United States and in New York. The representatives are frightened and most have decided no longer to distribute Ronit Furst eyewear because they do not want to deal with Defendants' threatening and abusive behavior.

37.    Art-Optic's agreement calls for Brintech to order 2,000 eyeglass frames by January 31, 2008. However, as of the end of November 2007, Avri Beeri, Brintech's owner, already informed Ehud Bibring, the CEO of Art-Optic, that he will not be able to purchase that amount because he is finding it extremely difficult to find representatives to sell the frames because of Defendants' belligerent behavior toward his representatives.

## FIRST CAUSE OF ACTION
(Copyright Infringement, Copyright Act of 1976; 17 U.S.C. § 101, *et seq.*)

38.    Art-Optic repeats and realleges the allegations set forth in paragraphs 1 through 37 above as if fully set forth herein.

39.    Art-Optic created and owns all of the unique Ronit Furst hand-painted eyewear frames and accompanying eyeglasses cases designs. The designs of three frames were registered with the U.S. Copyright Office. (The Certificates of Copyright Registration are annexed hereto as Exhibit 1.)

40.    Defendants had direct access to Art-Optic's original eyewear and case designs before they began producing infringing copies.

41.    Defendants have willfully created eyeglass frames with designs virtually identical to plaintiff's copyrighted eyewear and thus have infringed on Art-Optic's copyrighted frames.

42.    . Art-Optic has notified Defendants that they have infringed Art-Optic's copyrighted frames. Nevertheless, Defendants have continued to infringe upon Art-Optic copyrighted frames by manufacturing, marketing and selling their counterfeit frames in violation of the Copyright Act of 1976, 17 U.S.C. § 101, *et seq.*

43.    Defendants' acts of copyright infringement have irreparably damaged and will continue to cause irreparable damage to the business, reputation and good will of Art-Optic.

## SECOND CAUSE OF ACTION
(False Designations of Origin, False Representations and False Advertising,
Section 43 of the Lanham Act; 15 U.S.C. § 1125(a) – Trademark Infringement)

44.    Art-Optic repeats and realleges the allegations in paragraph 1 through 43 above as if fully set forth herein.

45.    The "Ronit Furst" trademark has been continuously used in commerce by Art-Optic since 2002 on its "Ronit Furst" brand of eyewear, cases and marketing materials relating to

the sale or offering for sale of the Ronit Furst brand of eyeglass frames in New York and throughout the United States.

46.    In violation of 15 U.S.C. § 1125(a), Defendants have subsequently used or caused to be used the "Ronit Furst" trademarks in interstate commerce and in a manner that affects interstate commerce by placing the "Ronit Furst" trademark on their counterfeit eyeglass frames and using Art-Optic's sales materials that contain the "Ronit Furst" trademark.

47.    Such use of the "Ronit Furst" trademark by Defendants on their counterfeit frames and sales materials causes and will continue to cause actual confusion as to the origin of the eyeglass frames being sold and offered for sale by Art-Optic under the trademark "Ronit Furst" because Defendants' use of the "Ronit Furst" trademark on their counterfeit eyeglasses falsely designates and misrepresents their origin.

48.    In doing the acts set forth above, Defendants have in bad faith deliberately used the marks "Ronit Furst" with the intent to deceive the trade and public into mistaking and confusing Art Optic's Ronit Furst brand of eyewear and accompanying case as the source of origin of the Tomashovers' counterfeit eyewear and accompanying case.

49.    Defendants' actions, as referred to above, were done for the purpose of unlawfully appropriating and trading on the goodwill and reputation that has been developed by Art-Optic under the trademark "Ronit Furst."

50.    Defendants' actions constitute a false designation of origin of the source of their counterfeit frames and cases.  Defendants' acts and activities also constitute a fraud and deception on the public, and the natural and probable tendencies of the acts of Defendants are calculated to deceive the public and to pass off the frames and cases manufactured, marketed and sold as those of Art-Optic.

51.    Defendants' acts of trademark infringement have irreparably damaged and will continue to cause irreparable damage to the business, reputation and good will of Art-Optic.

### THIRD CAUSE OF ACTION
(Common Law Trademark Infringement)

52.    Art-Optic repeats and realleges the allegations set forth in paragraphs 1 through 51 above as if fully set forth herein, and with respect to this cause of action specifically realleges paragraphs 44 through 48.

53.    Defendants' aforesaid intentional and unauthorized use of Art-Optic's "Ronit Furst" mark infringes upon Art-Optic's common law trademark rights.

54.    Defendants' acts of trademark infringement have irreparably damaged and will continue to cause irreparable damage to the business, reputation and good will of Art-Optic.

### FOURTH CAUSE OF ACTION
(False Designations of Origin, False Representations and False Advertising,
Section 43 of the Lanham Act; 15 U.S.C. § 1125(a) – Trade Dress)

55.    Art-Optic repeats and realleges the allegations of paragraphs 1 through 54 above as if fully set forth herein.

56.    The designs, including the shapes, colors, color combinations and graphics on the Ronit Furst eyewear and cases are inherently distinctive, non-functional designs created by Furst.

57.    Art-Optic has established invaluable goodwill and a wide patronage for its line of Ronit Furst eyewear and its cases. The unusual design of the eyewear and cases, and the high quality of the eyewear and the cases sold with each pair of glasses, have become fixed in the minds of the public as denoting and being associated exclusively with Art-Optic's Ronit Furst brand of eyewear.

58.    Defendants' design of their counterfeit Ronit Furst eyewear and case are deliberate and blatant copies of Art-Optic trade dress because they have (1) replicated Ronit

12

Furst's unique designs and (2) imprinted the "Ronit Furst" trademark on each counterfeit pair of glasses. Such imitation is calculated to mislead the public and to enable Defendants to palm off their counterfeit products in place of Art-Optic's products when the latter are called for by a purchaser.

59.    Defendants' acts of trade dress infringement have irreparably damaged and will continue to cause irreparable damage to the business, reputation and good will of Art-Optic.

### FIFTH CAUSE OF ACTION
(Common Law Trade Dress Infringement)

60.    Art-Optic repeats and realleges the allegations set forth in paragraphs 1 through 59 above as if fully set forth herein, and with respect to this cause of action specifically realleges paragraphs 55 through 59.

61.    Defendants' aforesaid intentional and unauthorized use of Art-Optic's "Ronit Furst" mark and the manufacturing, marketing and selling of counterfeit Ronit Furst eyewear and cases infringe upon Art-Optic's common law trade dress rights.

62.    Defendants' acts of trade dress infringement have irreparably damaged and will continue to cause irreparable damage to the business, reputation and good will of Art-Optic.

### SIXTH CAUSE OF ACTION
(False Designations of Origin, False Representations and False Advertising,
Section 43 of the Lanham Act; 15 U.S.C. § 1125(b) – False Advertising)

63.    Art-Optic repeats and realleges the allegations set forth in paragraphs 1 through 62 above as if fully set forth herein.

64.    Defendants' representation to optical store owners and at conventions that they are authorized representatives for Ronit Furst eyewear constitutes a false and misleading statement.

65. Defendants' representation to optical store owners and at conventions that they are selling authentic Ronit Furst eyewear constitutes a false and misleading statement.

66. Defendants' use of Ronit Furst marketing materials, which they obtained from Art-Optic during the term of their Agreement, as a vehicle to further their misrepresentation of themselves as Ronit Furst eyewear representatives selling Ronit Furst eyewear also constitutes a false and misleading statement.

67. Defendants' false and misleading statements have actually deceived consumers into thinking that they were purchasing authentic Ronit Furst eyewear, when they were actually not, and undoubtedly have the capacity to deceive a substantial portion of consumers into thinking the same.

68. The deception is material and likely to influence purchasing decisions because optical store owners and consumers are duped into thinking that they are purchasing authentic Ronit Furst eyewear when they are not.

69. Defendants' false and misleading statements are likely to continue to injure Art-Optic because their statements have led to declining sales and loss of goodwill and will undoubtedly lead to more of these kinds of damages for Art-Optic.

70. Art-Optic's authentic eyewear and cases and Defendants' counterfeit eyewear and cases have traveled in interstate commerce.

71. Defendants' false advertising has irreparably damaged and will continue to cause irreparable damage to the business, reputation and good will of Art-Optic.

14

## SEVENTH CAUSE OF ACTION
(False Advertising, N.Y. Gen. Bus. Law §350)

72.    Art-Optic repeats and realleges the allegations of paragraphs 1 through 71 above as if fully set forth herein, and with respect to this cause of action specifically realleges paragraphs 62 through 70.

73.    Defendants' false and misleading statements are misleading in a material respect because they deceive the consumer into believing that their counterfeit eyewear is authentic Ronit Furst eyewear.

74.    Defendants' false advertising has irreparably damaged and will continue to cause irreparable damage to the business, reputation and good will of Art-Optic.

## EIGHTH CAUSE OF ACTION
(Unfair Competition by Misappropriation)

75.    Art-Optic repeats and realleges the allegations of paragraph 1 through 74 above as if fully set forth herein.

76.    Art-Optic has manufactured, marketed and sold Ronit Furst eyewear and cases since 2002 in New York, throughout the United States, Europe, Israel and South Africa.

77.    Art-Optic has expended substantial resources to work with Furst to design, manufacture, market and sell its eyewear and cases. All of the designs are done by Furst and they, along with the design and creation of the marketing materials, belong to Art-Optic.

78.    Defendants' production, marketing and sale of their counterfeit eyewear openly free-rides on Art-Optic's efforts by simply copying Art-Optic's designs and selling identical products and marketing these products as their own.

79.    By usurping Art-Optic's designs and marketing materials, as well as using the "Ronit Furst" trademarks, Defendants unfairly have misappropriated Art-Optic's valuable commercial goodwill.

80.    Defendants' misappropriation of Art-Optic's designs and marketing materials has irreparably damaged and will continue to cause irreparable damage to the business, reputation and good will of Art-Optic.

## NINTH CAUSE OF ACTION
(Tortious Interference with Prospective Economic Advantage)

81.    Art-Optic repeats and realleges the allegations set forth in paragraphs 1 through 80 above as if fully set forth herein.

82.    After learning of Art-Optic's new distributorship relationship with Brintech, S. Tomashover has engaged in a campaign to identify Brintech's representatives, and on at least one occasion has given a false identity in order to contact a representative. S. Tomashover has verbally harassed and threatened to sue and bankrupt Brintech's representatives if they continued to sell Ronit Furst eyewear and has harassed and threatened anybody who has expressed interest in distributing or selling Ronit Furst frames.

83.    Defendants' actions themselves demonstrate that they have acted with the sole purpose of harming Art-Optic and have used dishonest, unfair or improper means.

84.    Art-Optic has been harmed by Defendants' behavior. Brintech's distributors do not want to sell the original frames as a result of S. Tomashover's threats.

85.    Art-Optic's agreement calls for Brintech to order 2,000 eyeglass frames by January 31, 2008. However, as of the end of November 2007, Avri Beeri, Brintech's owner, already informed Ehud Bibring that he will not be able to purchase that amount because he is

16

finding it extremely difficult to find representatives to sell the frames because of Defendants' belligerent behavior toward representatives.

86.    Defendants' conduct has therefore severely limited Art-Optic's ability to do business in the United States, thereby causing enormous economic damages.

87.    Defendants' tortious interference with Art-Optic's prospective economic advantage has irreparably damaged and will continue to cause irreparable damage to the business, reputation and good will of Art-Optic.

### TENTH CAUSE OF ACTION
(Enforcement of the Temporary Injunction Issued by the District Court of Tel Aviv-Jaffa)

88.    Art-Optic repeats and realleges the allegations set forth in paragraphs 1 through 87 above as if fully set forth herein.

89.    When it learned of the Defendants' wrongful acts, Art-Optic sought a Temporary Injunction from the Courts in the State of Israel.

90.    The Court issued a Temporary Injunction on October 9, 2007. A copy is annexed hereto as Exhibit 2.)

91.    The Defendants have violated the Injunction.

92.    Art-Optic is entitled to enforce the Injunction in this Court, which has jurisdiction over the Defendants.

WHEREFORE, Plaintiff Art-Optic, Ltd. requests judgment against Defendants Samuel Tomashover, Meryl Tomashover and Newlight Eyewear, LLC as follows:

A.    For a temporary restraining order, preliminary injunction and permanent injunction against Defendants, their members, officers, employees, agents, servants, representatives, manufacturers and partners, assigns, successors, heirs, executors, administrators, and all persons acting for, with, by, through, or under them, and each of them:

1.    restraining and enjoining Defendants during the pendency of this action and permanently from infringing upon Art-Optic's copyrights, and from manufacturing, marketing, distributing and selling any counterfeit Ronit Furst eyewear;

2.    ordering Defendants to deliver up to be impounded during the pendency of this action and permanently all Art-Optic marketing materials in their possession or under their control;

3.    ordering Defendants to deliver up for impoundment and or destruction all infringing copies and all plates, molds, and other matter for making such infringing copies pursuant to Fed. R. Civ. P. Rule 65(f) and 17 U.S.C. § 503;

4.    ordering Defendants to immediately cease all manufacturing of infringing eyewear and cases and cancel all pending manufacturing orders and outstanding sales to any and all retail stores or consumers;

5.    restraining and enjoining Defendants from using in any manner the "Ronit Furst" name, or any other term or terms likely to cause confusion with these trademarks, in connection with manufacturing, marketing, distributing and selling counterfeit Ronit Furst eyewear and accompanying cases;

18

6.    restraining and enjoining Defendants from directly or indirectly using the "Ronit Furst" trademark or any other mark or word similar to these trademarks in a manner that is likely to cause dilution, confusion, or mistake, or to deceive;

7.    restraining and enjoining Defendants from using in any manner a name or mark confusingly similar to the "Ronit Furst" trademark in connection with the Tomashovers' goods or services in such a manner that is likely to create the erroneous belief that these goods or services are authorized by, sponsored by, licensed by, or are in some way associated with Art-Optic or the Ronit Furst brand of eyewear;

8.    restraining and enjoining Defendants from any use or further advertising related in any way to or connected with the use of the marks "Ronit Furst" in conjunction with their counterfeit Ronit Furst eyewear and cases;

9.    restraining and enjoining Defendants from communicating in any manner with any person connected with any eyewear or case manufacturer or materials supplier of counterfeit Ronit Furst eyewear and cases;

10.    restraining and enjoining Defendants from interfering in any way with Art-Optic's performance of its commitments to its customers and prospective customers;

11.    restraining and enjoining Defendants from using trade dress that is in any way similar to Art-Optic's, and particularly from copying the ornamental appearance of Ronit Furst eyewear and cases;

12.    restraining and enjoining Defendants from misrepresenting the source of origin of its products;

13.    ordering Defendants to account for all gain, profits and advantages derived by them as a result of their unlawful acts alleged herein;

19

14.    ordering Defendants to account for all counterfeit Ronit Furst eyewear and cases manufactured and sold;

15.    ordering Defendants to account for authentic Ronit Furst eyewear in their possession since the termination of their relationship with Art-Optic and to account for all amounts sold;

16.    ordering Defendants to disclose all manufacturers, suppliers and purchasers of counterfeit Ronit Furst eyewear and cases; and

17.    ordering S. Tomashover to immediately withdraw the trademark registration of the mark RONIT FURST and provide written notification to Art-Optic;

B.    For disgorgement of all gains, profits, and advantages derived by Defendants as a result of their unlawful acts alleged herein;

C.    For damages to Art-Optic for injury to its business, reputation, and good will, in the total amount of $10,000,000;

D.    For statutory damages;

E.    For actual damages:

F.    For punitive damages:

G.    For treble damages;

H.    For exemplary damages;

I.    For actual damages and profits suffered by Art-Optic as a result of Defendants' copyright infringement or, in the alternative, at Art-Optic's election, statutory damages as set forth in 17 U.S.C.A. § 504;

J.    Enforcement of the Temporary Injunction issued by the District Court of Tel Aviv-Jaffa, Israel on October 9, 2007;

20

K.    For all costs and expenses, including, without limitation, attorney's fees incurred by Art-Optic in this action;

L.    For pre- and post- judgment interest at the maximum legal rate; and

M.    For such other and further relief as the court deems just and proper.

Dated: New York, New York
       January 29, 2008

SHIBOLETH, YISRAELI, ROBERTS & ZISMAN, L.L.P.

By: _____
       Shira Y. Rosenfeld (SR 5392)
       One Penn Plaza, Suite 2527
       New York, New York 10119
       Tel: (212) 244-4111
       Fax: (212) 563-7108

*Attorneys for Plaintiff Art-Optic, Ltd.*

21

# EXHIBIT D

# SHIB🌐LETH

Shiboleth, Yisraeli, Roberts & Zisman, LLP

January 31, 2008

Judge Miriam Goldman Cedarbaum
United States District Court
Southern District of New York
500 Pearl Street, Room 1330
New York, New York 10007

*Art-Optic, Ltd. v. Tomashover*
08 CV 0327 (MGC)(KNF)

Dear Judge Cedarbaum:

Plaintiff Art-Optic, Ltd. has filed an amended complaint adding another cause of action for enforcement of the temporary injunction that was issued by the District Court in Israel. Plaintiff respectfully submits that enforcement of the temporary injunction should be considered as additional relief requested in its Order to Show Cause for a Temporary Restraining Order, Preliminary Injunction and Additional Related Relief.

Respectfully,

*Shira Rosenfeld* by: SC
Shira Y. Rosenfeld

cc: Richard Schurin, Esq. (by first-class mail and e-mail)

**Tel Aviv Affiliate**
Museum Tower, 4
Berkowitz Street
Tel Aviv 64238 Israel
Phone 972-3-777-8333
Fax 972-3-777-8444
manager@shibolet.com

1 Penn Plaza, Suite 2527 · New York, NY 10119
Phone 212-244-4111 · Fax 212-563-7108 · Email info@shiboleth.com

# EXHIBIT E

GOTTLIEB, RACKMAN & REISMAN, P.C.

COUNSELORS AT LAW

PATENTS · TRADEMARKS · COPYRIGHTS · INTELLECTUAL PROPERTY

270 MADISON AVENUE
NEW YORK, N.Y. 10016-0601
PHONE: (212) 684-3900 · FACSIMILE: (212) 684-3999
WEB: http://www.grr.com · E-MAIL: info@grr.com

JAMES REISMAN
MICHAEL I. RACKMAN
GEORGE GOTTLIEB
BARRY A. COOPER
DAVID S. KASHMAN
ALLEN I. RUBENSTEIN
JEFFREY M. KADEN
AMY B. GOLDSMITH
TIBERIU WEISZ
MARIA A. SAVIO
RICHARD S. SCHURIN

OF COUNSEL
DIANA MULLER*

* MEMBER OF THE BAR
OF ARGENTINA ONLY

DONNA MIRMAN BROOME
BARBARA H. LOEWENTHAL
MARC P. MISTHAL
FRANK D. DECOLVENAERE
STEVEN STERN
YUVAL H. MARCUS

PATENT AGENT
ZOYA V. CHERNINA

February 1, 2008

**By Hand**

Hon. Miriam G. Cedarbaum
United States District Court
Southern District of New York
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street, Room 1330
New York, N.Y. 10007

        Re:   <u>Art-Optic, Ltd. v. Samuel Tomashover et. al.</u>
                08 CV 0327 (MGC) (KNF)

Dear Judge Cedarbaum:

This firm represents defendants in the above referenced matter. We write in response to plaintiff's counsel's letter of January 31, 2008, which requests that that plaintiff's new claim[1] for enforcement of the Israeli court injunction be considered as additional relief requested in its Order to Show Cause. In other words, plaintiff seeks to amend its Order to Show Cause.

Plaintiff's request should be denied for the following reasons. First, by asking this Court to consider granting enforcement of the foreign judgment in the context of a <u>preliminary injunction</u> motion, plaintiff is really seeking <u>summary judgment</u> on this new claim. Plaintiff is requesting that the court grant it all the relief that its new claim seeks -- this is a request for partial summary judgment. Of course, the procedures and legal standards for a summary judgment motion are very different than the procedures and legal standards applicable to motions for a preliminary injunction. Moreover, as it stands right now, if the Court finds both a likelihood of success on the merits and irreparable harm, the Court is free to fashion any preliminary injunction order (even adopting the terms of the Israeli order.)

---

[1] After receiving a copy of plaintiff's letter to the Court, we phoned plaintiff's counsel and asked that they fax or e-mail us a copy of the amended pleading (a copy was not available via ECF) Although plaintiff's counsel acknowledged that the pleading had been scanned for the purpose of e-mailing same to the Court clerk for filing, plaintiff's counsel advised that it was still unable to forward or fax a copy of the amended pleading to us, and that a copy had been mailed to our office on Wednesday. As of the writing of this letter, we have received our mail for Friday, and did <u>not</u> receive a copy of the amended pleading. This is the second time that plaintiff has refused to provide defendant's counsel with papers it has filed with the court. Such discourtesy and gamesmanship should not be tolerated.

Hon. Miriam G. Cedarbaum
February 1, 2008
Page 2

     Second, plaintiff's request to amend its Order to Show Cause is untimely and prejudices defendants. Plaintiff submitted its Order to Show Cause on January 17th. A hearing was held on January 22nd, and at that hearing it was specifically noted that plaintiff was <u>not</u> asking the Court to enforce the Israeli judgment. Now, less than week before findings of fact and conclusions of law are due, plaintiff seeks to amend its Order to Show Cause to seek this additional relief. In fact, plaintiff has had since October 10, 2007 (the date of the Israeli Order) to seek this relief, but chose to wait until now, less than 1 week before the parties' submissions are due. Defendants are hard pressed to complete the findings of fact and conclusions of law on all of the issues already presented in plaintiff's papers, and respectfully submit that it is unfair to add yet an additional burden to defendants.

     Based on the above, defendants respectfully request that the Court deny plaintiff's request to amend its Order to Show Cause.

Respectfully submitted,
GOTTLIEB, RACKMAN & REISMAN

Richard S. Schurin

cc:    Shira Rosenfeld, Esq. (By e-mail and by hand)