UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
ART-OPTIC, LTD.,                                    :
                                                    :
                            Plaintiff,              :          08 CV 0327 (MGC)(KNF)
                                                    :
                    v.                              :
                                                    :
SAMUEL TOMASHOVER and                               :
MERYL TOMASHOVER,                                   :
                                                    :
                            Defendants.             :
------------------------------------------------------------------X


**MEMORANDUM OF LAW IN OPPOSITION TO**
**TO DEFENDANTS' ORDER TO SHOW CAUSE**
**TO COMPEL ARBITRATION AND FOR A STAY**


Shira Y. Rosenfeld  (SR 5392)
SHIBOLETH, YISRAELI, ROBERTS & ZISMAN, LLP
1 Penn Plaza, Suite 2527
New York, New York  10119
Tel: (212) 244-4111
Fax: (212) 563-7108

*Attorneys for Plaintiff*


February 28, 2008

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT…………………………………………………………………….1

ARGUMENT……………………………………………………………………………………….11

POINT I

DEFENDANTS WAIVED THEIR RIGHT TO DEMAND ARBITRATION……………............2

      A.     Defendants Never Requested Arbitration Since the Commencement
            of the Litigation in Israel Ten Months Ago.............................................................4

      B.     Defendants Affirmatively Litigated in the Israeli and United States Courts
            For Ten Months Without Requesting Arbitration…………………………….....5

      C.     Plaintiff Would Be Severely Prejudiced By A Belated Referral To Arbitration…9

POINT II

PLAINTIFF'S ACTION SEEKS TO STOP DEFENDANTS FROM
MANUFACTURING, MARKETING AND SELLING COUNTERFEIT GOODS
IN VIOLATION OF PLAINTIFF'S UNITED STATES INTELLECTUAL PROPERTY
RIGHTS AND RELATED CLAIMS...................................................................................12

CONCLUSION………………………………………………………………………………..15

i

## TABLE OF AUTHORITIES

Cases:

*Cotton v. Slone*,
   4 F.3d 176 (2d Cir. 1993). ............................................................................. 2, 3

*Desktop Images, Inc. v. Ames*,
   929 F. Supp. 1339 (D. Colo. 1996)................................................................. 12

*In re Matter of S&R Company of Kingston v. Latona Trucking, Inc.*,
   159 F.3d 80 (2d Cir. 1998)............................................................................. 2, 3

*JVN Music v. Rodriguez*,
   2000 WL 827702 (S.D.N.Y. 2000)................................................................ 14

*Kamakazi Music Corp v. Robbins Music Corp*, 684 F.2d 228 (2d Cir. 1982)............................. 14

*Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.*, 67 F.3d 20 (2d Cir 1995) ................... 3

*Orange County Choppers v. Goen Technologies Corporation* 374 F. Supp. 2d 372
   (S.D.N.Y. 2005) ............................................................................................ 13

*PPG Industries, Inc. v. Webster Auto Parts Inc.*, 128 F.3d 103 (2d Cir. 1997) ........................ 2, 3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
ART-OPTIC, LTD.,                            :
                                            :
                        Plaintiff,          :           08 CV 0327 (MGC)(KNF)
                                            :
            v.                              :
                                            :
NEWLIGHT EYEWEAR, L.L.C.,                    :
SAMUEL TOMASHOVER and                        :
MERYL TOMASHOVER,                            :
                                            :
                        Defendants.         :
-----------------------------------------------------------------X

### MEMORANDUM OF LAW IN OPPOSITION TO
### TO DEFENDANTS' ORDER TO SHOW CAUSE
### TO COMPEL ARBITRATION AND FOR A STAY

Plaintiff Art-Optic, Ltd. ("Art-Optic") respectfully submits this memorandum of law in

opposition to defendants' Order to Show Cause to Compel Arbitration and for a Stay.

### PRELIMINARY STATEMENT

When plaintiff filed its claim and temporary injunction before the District Court of Tel

Aviv in April 2007, the Tomashovers were entitled to request a stay of the proceedings and have

the action referred to an arbitrator.  They never requested this relief.  Instead, they chose to

litigate the matter in Court by opposing the temporary injunction motion.  The Tomashovers

even filed a permissive counterclaim alleging damages, which is still pending before the District

Court.  Their actions clearly demonstrate that they had no intent or desire to submit the dispute to

arbitration.  Having lost the temporary injunction motion in Israel and facing the real possibility

that (1) they will be enjoined from manufacturing, marketing and selling their counterfeit Ronit

Furst eyewear, (2) will have their counterfeit Ronit Furst  eyewear seized and subsequently

impounded or destroyed, (3)  will have their assets restrained and (4) will be forced to produce

1

their counterfeit eyewear and books for plaintiff's inspection, Defendants cannot now "remember" the arbitration clause, which they deliberately chose to ignore. The Tomashovers' conduct closed the door on their right to activate the arbitration clause.

Moreover, Art-Optic will be severely prejudiced by a belated referral to arbitration. Defendants have been manufacturing, marketing and selling counterfeit Ronit Furst eyewear for a year in New York and throughout the United States, which has caused great economic harm to Art-Optic in these markets. A referral to arbitration would essentially mean that Plaintiff will have to start again after 10 months of active litigation, and the economic harm to Art-Optic would be prolonged and exacerbated.

Furthermore, Defendants' egregious actions – production and distribution of counterfeit eyewear – was certainly not contemplated and are well beyond the contours of the Distribution Agreement.[1]

## ARGUMENT

## POINT I

### DEFENDANTS WAIVED THEIR RIGHT TO DEMAND ARBITRATION.

The Second Circuit has held that "[a] party is deemed to have waived its right to arbitration if it 'engages in protracted litigation that results in prejudice to the opposing party." *In re Matter of S&R Company of Kingston v. Latona Trucking, Inc.*, 159 F.3d 80, 83 (2d Cir. 1998) (*citing Cotton v. Slone*, 4 F.3d 176, 179 (2d Cir. 1993); *PPG Industries, Inc. v. Webster Auto Parts Inc.*, 128 F.3d 103, 107 (2d Cir. 1997). In determining whether a party has waived its right to arbitration, the courts considered the following three factors in conjunction with each

---

[1] Plaintiff can also provide a legal opinion from Israel stating that even if the arbitration clause was construed under Israeli contract law, the law that governs the Agreement, the Tomashovers still would not be able enforce the arbitration clause and would not be entitled to a stay.

other: "(1) the time elapsed from commencement of litigation to the request for arbitration; (2) the amount of litigation (including exchanges of pleadings, any substantive motions, and discovery); and (3) proof of prejudice, including taking advantage of pre-trial discovery not available in arbitration, delay, and expense." *Matter of S & R Company of Kingston*, 159 F.3d at 83 (2d Cir. 1998); *PPG Industries*, 128 F.3d at 107; *Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.*, 67 F.3d 20, 25 (2d Cir 1995).

The Second Circuit has taken into consideration other elements that fall within the three factors. When considering the first factor, the Second Circuit has held that a party may not allow a suit to run its course, become dissatisfied with the outcome and then seek to enforce the right of arbitration. *See Cotton*, 4 F.3d at 180. In *Leadertex*, the Second Circuit found that defendant waived its request for arbitration when the request was made "[o]nly at the eleventh hour, with trial imminent, and apparently to counter plaintiff's attempt to replevy its goods in defendant's hands." *Leadertex,* 67 F.3d at 26. With respect to the second factor, the Second Circuit considers the moving party's awareness of its right to arbitration at the outset of the litigation, and its intent to litigate. *PPG Industries*, 128 F.3d at 109; *Cotton*, 4 F.3d at 179. In terms of the third factor, proof of prejudice, the Second Circuit in *Leadertex*, distinguished between two types of prejudice: discovery and economic. *Leadertex*, 67 F.3d at 26-27. The Second Circuit found that even though plaintiff was not prejudiced because defendant did not obtain discovery during the litigation that it might not have been able to obtained during arbitration, the plaintiff was nevertheless prejudiced because the plaintiff sustained economic harm because the lack of resolution of the dispute economically harmed plaintiff, and that the "economic harm would be exacerbated were the belated initiation of arbitration compelled." *Leadertex*, 67 F.3d at 27. The

3

court concluded that economic harm alone suffices as prejudice and supports a finding of waiver.

*Id.*

**A.      Defendants Never Requested Arbitration Since the**
**         Commencement of the Litigation in Israel Ten Months Ago.**

Art-Optic commenced an action against the Tomashovers in the Tel Aviv-Jaffa District Court in April 2007. (Declaration of Shira Y. Rosenfeld ("Rosenfeld Dec.") ¶ 2, Ex. 1.) In ten months, the Tomashovers never have requested arbitration   In fact, the subject of arbitration was first raised, not by Defendants, but by the Court at a conference on January 22, 2008.  It was not until February 4, 2008 that Defendants wrote to the Court requesting a conference to discuss their proposed motion to compel arbitration.  (*Id.* at ¶ 3, Ex. 2.)  Fearing the evidentiary hearing in conjunction with Plaintiff's Order to Show Cause for a preliminary injunction, seizure order, asset restraining order and expedited discovery order, which the Court scheduled for February 20, 2008, Defendants served Plaintiff with their Order to Show Cause to Compel Arbitration and for a Stay on the evening of February 14, 2008. (*Id.*)  Just like the defendants in *Leadertex*, it is clear that Defendants waived its request for arbitration because the request was made "only at the eleventh hour," with the evidentiary hearing on Plaintiff's motion for a preliminary injunction, seizure order, asset restraining order and expedited discovery order imminent, and apparently to counter Plaintiff's attempt to (1) enjoin defendants from manufacturing, marketing and selling their counterfeit Ronit Furst eyewear; (2) have Defendants' counterfeit Ronit Furst  eyewear seized and subsequently impounded or destroyed; (3)  have Defendants' assets restrained and (4) force Defendants to produce their counterfeit eyewear and books for Plaintiff's inspection.

**B.      Defendants Affirmatively Litigated in the Israeli and
United States Courts  For Ten Months Without Requesting Arbitration.**

Since Plaintiff commenced its action against the Tomashovers in Tel Aviv-Jaffa District

Court in April 2007, a substantial amount of litigation has taken place in the Israeli and United

States Courts, including several affirmative actions taken by Defendants.  Their actions, as set

forth below, clearly demonstrates that despite their awareness of the arbitration clause in the

Distribution Agreement they signed, Defendants intended to litigate and had no desire to submit

any dispute to arbitration:

- After Plaintiff filed its claim and requested an *ex parte* temporary injunction in

    April 2007, the Tomashovers, who are New York residents, consented to submit

    to the jurisdiction of the Tel Aviv-Jaffa District Court by the Tomashovers'

    counsel submission of a Statement of Defense on July 22, 2007.  (Rosenfeld Dec.

    ¶ 5, Ex. 3.)

- The Tomashovers actively defended themselves against Plaintiff's motion for a

    temporary injunction.  Specifically, Samuel Tomashover testified at the temporary

    injunction hearing on September 20, 2007. (*Id.* at ¶ 6.)  Furthermore, after the

    hearing, the Tomashovers' counsel, submitted a Defendants' Summary, arguing

    that the court should postpone issuing a temporary injunction and requesting

    attorneys' fees.  (*Id*. at ¶ 6, Ex. 4)

- On October 9, 2007, the Israeli Court issued a decision granting the temporary

    injunction. (*Id*. at¶ 7, Ex. 5) **Six days later, on October 18, 2007, the

    Tomashovers submitted a permissive counterclaim in the Israeli Court and

    specifically requesting that pursuant to paragraph 5 of the Distribution

    Agreement, Art-Optic purchase its remaining Ronit Furst inventory.**

- The complaint in this action, 20 pages in length and alleging nine causes of action, was filed on January 14, 2008. (*Id*. at ¶ 9.) On January 18, 2008, plaintiff filed its Order to Show Cause for a Temporary Restraining Order, Preliminary Injunction and Related Relief, which consisted of a 36-page memorandum of law, two affidavits, one declaration and a total of 15 exhibits. (*Id.* at ¶ 10.) The Court subsequently scheduled a conference on the matter on January 22, 2008. (*Id*. at ¶ 11.) In response, defendants' counsel submitted a letter to this Court on January 21, 2008 in anticipation of the conference, where they maintained that there is litigation already in progress in the Israeli courts. (*Id*. at ¶ 11, Ex. 7) Defendants' counsel did not mention arbitration once in their letter. (*Id*. at ¶ 12.)

- At the January 22, 2008 conference, defendants' counsel once again did not raise arbitration. (*Id*.)

- On February 1, 2008, plaintiff sent defendants its First Request for Production of Documents. (*Id*. at ¶ 13.)

- On February 4, 2008, plaintiff filed an amended complaint. (*Id*.)

- Between January 31, 2008 and February 7, 2008, each party drafted three detailed letters to the Court concerning the amendment of the complaint, discovery and defendants' proposed motion to compel arbitration and a stay. (*Id*. at ¶ 14.)

- On February 7, 2008, plaintiff filed its 46-page Proposed Findings of Fact and Conclusion of Law, and defendants filed their Proposed Findings of Fact,

Proposed Conclusion of Law, Affidavit of Samuel Tomashover and Declaration of Richard S. Schurin. (*Id*. at ¶ 15.)

- On February 14, 2008, defendants served plaintiffs with the Order to Show Cause to Compel Arbitration. (*Id*. at ¶ 16.)

- On February 19, 2008, plaintiff filed the Reply Declaration of Shira Y. Rosenfeld consisting of seven exhibits to be used at the hearing. (*Id.* at ¶ 16.)

- On February 20, 2008 and February 21, 2008, the Court commenced the evidentiary hearing, where: (1) the Court accepted plaintiff's submission of the Affidavit of Cathy Shue, after defendants contended that her affidavit accompanying plaintiff's motion was "stale"; (2) Ronit Furst testified on direct examination and was cross-examined by defendants' counsel; (3) Ehud Bibring testified on direct examination and was cross-examined by defendants' counsel. (*Id*. at ¶ 17.)

- At the end of the hearing on February 21, 2008, the Court ordered that defendants produce their inventory of "Ronit Furst" eyewear and their financial books and records for inspection and that plaintiff produce its communications with the Tomashovers. (*Id*. at ¶ 18.) This exchange of discovery is expected to be completed at the end of this week or the beginning of next week. (*Id*. at ¶ 19.)

- On February 25, 2008, Defendants, despite their motion to compel arbitration, sent an extensive request for document production to Plaintiff. (*Id*. at ¶ 20, Ex. 8.)

As this timeline illustrates, defendants submitted themselves to the jurisdiction of the Israeli court where they actively fought the motion for the temporary injunction and

7

subsequently filed a counterclaim, which is still pending before the court in Israel.  Furthermore, defendants have actively participated in the litigation before this Court, and despite their motion to compel arbitration intend to seek discovery in this litigation that may not be available to them in arbitration.

As such, Defendants' argument against waiver is weak.  It is irrelevant that Plaintiff instituted the action in the Israeli court.  Furthermore, contrary to their assertion, Defendants did consent to be subject to action in Israel when they breached the Distribution Agreement and consented to be subject to this action when they are manufacturing, marketing and selling counterfeit Ronit Furst eyewear in the United States in violation of Plaintiff's United States intellectual property rights.  Moreover, Plaintiff has been diligent in asserting its claims. Plaintiff commenced the Israeli action in April 2007 one month after it discover that the Tomashovers were selling counterfeits.  (Bibring Aff. ¶¶ 22, 32.)  Despite the issuance of  the temporary injunction on October 9, 2007, the Defendants continued to sell counterfeit goods. Plaintiff duly filed this action in January 2008.  In those 10 months, it was Defendants who failed to compel arbitration in both actions and in addition brought a permissive counterclaim against Plaintiff in the Israel action in October 2007.  In fact, Defendants still have not compelled arbitration in the Israeli action.

Finally, Defendants have based their claim to arbitrate by stating that all the claims asserted in both actions are similar.  Now Defendants, in an attempt to extricate themselves from their actions which clearly constitute a waiver of arbitration, claim that both actions are distinct. However, if the actions are distinct, then the claims brought in this action are not even subject to the arbitration clause in the first place.

**C**.    **Plaintiff Would Be Severely Prejudiced By A Belated Referral To Arbitration.**

In March 2007, Art-Optic discovered that the Tomashovers were selling counterfeit Ronit Furst eyewear.  One month later in April 2007, they initiated an action in Tel Aviv-Jaffa District Court and they initiated this action in January 2008.  Both disputes have not been resolved and have been actively fought by Defendants.  It is unknown how long before March 2007 Defendants have been selling counterfeit eyewear, but they certainly have been marketing and selling counterfeits of Plaintiff's products in New York and throughout the United States for at least a year.

What is known is that since March 2007 defendants' continuous flagrant marketing and sale of counterfeit Ronit Furst eyewear has caused great economic harm to Art-Optic's sale of its eyewear in New York and throughout the United States.  In the past year, the Tomashovers have attended conventions in New York, Chicago and Las Vegas where they have claimed to represent Ronit Furst eyewear and have sold untold amounts of their counterfeit Ronit Furst eyewear. (Affidavit of Ehud Bibring, sworn to on January 9, 2008, "Bibring Aff." ¶¶ 26, 27, Ex. 7; Affidavit of Avri Beeri, sworn to on January 4, 2008, ("Beeri Aff.") ¶¶ 5-6, 9.)  At the convention in Las Vegas in October 2007, defendants had a booth less than 50 feet from Art-Optic's booth selling original Ronit Furst frames.  (Bibring Aff. ¶ 27; Beeri Aff. ¶¶ 5-6.)  This convention appearance caused Art-Optic significant damage to its outstanding reputation, a great deal of embarrassment and thousands dollars in lost sales because customers avoided Art-Optic's booth when they saw identical frames being sold so close to them for a lower price.  (*Id.*)  Defendants have also sold counterfeit Ronit Furst frames to optical stores throughout the United States. (Bibring Aff. ¶¶ 17-22, 28-29, Ex. 4, 5; Beeri Aff. ¶¶ 8, Ex. 3) These stores include Davante in Las Vegas and Bella Vista Optics, which Tomashover has admitted selling eyewear, albeit

9

untruthfully stating that he sold authentic Ronit Furst eyewear.   (Affidavit of Samuel

Tomashover, sworn to on February 7, 2008, ¶ 19.)[2]

Furthermore, Defendants' campaign to prevent plaintiff from selling its own goods in the

United States has also caused serious economic harm, which is best articulated in Mr. Bibring and

Mr. Beeri affidavits:

> 31. We have also had serious business losses because of the Defendants. We
> negotiated an agreement in May 2007 with a new distributor, Beeri, based in
> North Carolina, to distribute the Ronit Furst frames in the United States. The
> Defendants, specifically Samuel Tomashover, are attempting to prevent Beeri's
> representatives from selling our frames in the United States.  Tomashover has
> repeatedly threatened to sue all distributors and representatives and bankrupt
> them.   He has also approached Beeri's representatives and has verbally
> harassed, threatened, and attempted to intimidate them and anybody who has
> expressed interest in distributing or selling the Ronit Furst frames. The
> distributors do not want to sell the original frames as a result of Samuel
> Tomashover's threats. The Defendants have therefore effectively limited the
> US sales of Ronit Furst frames.   My agreement with Beeri has called for him
> to order an additional 2,000 eyeglasses frames by January 31, 2008.  However,
> as of the end of November, Beeri has already informed me that he will not be
> able to purchase this amount because he is finding it extremely difficult to find
> representatives to sell the frames because of the Defendants' belligerent
> behavior towards the representatives.  In fact, Beeri has found only three
> representatives that will sell the frames. Beeri's representative on the West
> Coast has told him that she will only begin to find more sales representatives
> once the legal problems end.

 (Bibring Aff. ¶ 31.)

> 33. The Defendants are clearly embarking on a program to expand their
> counterfeiting business, divert business away from Art-Optic and earn money
> off of the hard-earned reputation built up over years by Ronit Furst and Art-
> Optic.  By physically threatening and intimidating Beeri's representatives in
> the United States, Defendants have ensured that no one wants to work with us
> and I am losing sales of the glasses while Defendants enjoy the sale of their
> counterfeit products.  They took advantage of our business relationship, stole
> the core of my business, and are now doing everything they can to run me out
> of business.  They need to be stopped immediately.

(Bibring Aff. ¶ 33.)

---

[2]   Mr. Tomashover's Affidavit was filed with the Court in conjunction with Defendants' Proposed Findings of Fact on February 7, 2008.

10. It has been difficult contracting distributors to sell the frames throughout the country because Defendants have been flooding the marketplace with counterfeit goods. Furthermore, whenever I have successfully contracted a distributor, Defendants have verbally threatened and intimidated distributors so that most choose to no longer distribute Ronit Furst frames because they do not want to deal with Defendants' threatening and abusive behavior.

11. Specifically, Defendants have been actively seeking out the names and contact information of our distributors throughout the United States. Defendant Samuel Tomashover has approached numerous distributors that we procured at Vision Expo West in Las Vegas. Samuel Tomashover told these distributors fabricated stories about Art-Optic, Ronit Furst and me, which has ruined all of our reputations. He has also verbally harassed and threatened litigation against these distributors if they decided to work with us. Because of his strong-arm tactics, most of the distributors have chosen not to work with us. The distributors have even been fearful of letting us know of Samuel Tomashover's threatening and abusive behavior. I only happened to find out because one of the representatives had the courage to tell me.

12. At Vision Expo West in Las Vegas, I entered into agreements with representatives to distribute Ronit Furst frames in California, Arizona and Illinois. After being harassed by Samuel Tomashover, those distributors I contracted with refused to distribute any frames. Two of these distributors have since told me that until a judgment is rendered, they will not distribute any Ronit Furst Frames for Brintech.

13. Lynn Stewart, my distributor in New York and Connecticut, was also approached by Samuel Tomashover. He has threatened to bankrupt her and "make [her] sleep on the street" if she continued to try to distribute Ronit Furst Frames. She is afraid for her safety, and therefore since November 2007 has decided not to sell Ronit Furst eyewear in optical stores that sell the counterfeit frames.

14. My agreement with Art-Optic calls for me to order an additional 2,000 eyeglasses frames by January 31, 2008. However, as of the end of November, I already informed Ehud Bibring that I will not be able to purchase this amount because I am finding it extremely difficult to find representatives to sell the frames because of the Defendants' belligerent behavior towards the representatives. In fact, I have found only three representatives that will sell the frames. My representative on the East Coast has told me that she will only begin to find more sales representatives once the legal problems end.

(Beeri Aff. ¶¶ 10-14.)

Art-Optic has suffered economic harm over the past 10 months, and the economic harm will be exacerbated should a belated initiation of arbitration be compelled. This  economic  harm suffices to demonstrate the prejudice necessary to support a determination that Defendants have waived their rights to arbitration.

**POINT II**

**PLAINTIFF'S ACTION SEEKS TO STOP DEFENDANTS
FROM MANUFACTURING, MARKETING AND SELLING
COUNTERFEIT GOODS IN VIOLATION OF PLAINTIFF'S
UNITED STATES INTELLECTUAL PROPERTY RIGHTS AND RELATED CLAIMS.**

An arbitration clause in a sales and distributorship agreement does not govern when the distributor subsequently infringes on the intellectual property rights of the manufacturer. *Desktop Images, Inc. v. Ames*, 929 F. Supp. 1339 (D. Colo. 1996).  In *Desktop Images*, which is directly on point, the parties entered into an agreement which authorized defendant to "advertise, promote and sell" a modified version of the manufacturer's product, which was created from the manufacturer's master version. *Id.* at 1340.  The defendant subsequently allowed another party to copy the modified version and sell it under their name without plaintiff's knowledge. *Id.*  The court cited to Melvin B. Nimmer in 3 *Nimmer on Copyright* § 10.15[A], who wrote that if there is no provision in the contract stating that an infringement suit shall be settled by arbitration, then a court has no basis to send an infringement suit to arbitration.  *Id.* at 1345.  The court then held:

> A reasonable interpretation of the Agreement is that it does not contemplate arbitration of a copyright infringement action because, such action does not arise under the agreement. If there is no agreement to arbitrate such infringement, there is no basis to send the suit to arbitration. *See* Nimmer, *supra,* § 10.15[B] n. 39.

> As stated in a case cited by both parties, "[t]he question to be asked is not when did the acts complained about occur, but rather where do the rights and obligations which control the resolution of the dispute arise." *Merrill, Lynch,* 574 F.Supp. at 1475. The rights and obligations controlling the resolution of the issues raised in the complaint arise chiefly under the Copyright Act.

12

> This case, rather than concerning a contract dispute, i.e. the failure of Silicon/Aames to comply with the terms of the Agreement, focuses on the violation of the copyright owner's property rights arising under the act. As such, Desktop properly seeks its remedies under the Copyright Act. *See Edwards & Co. v. SNE Enterprises, Inc.,* 1995 WL 688707 at *2-3 (N.D.Ill. Nov. 13, 1995).

*Desktop Images, Inc*., 929 F.Supp. at 1345.

Here, the rights and obligations controlling the resolution arise solely from the Copyright Act and the Lanham Act and the related state and common law claims.  Nowhere in the Agreement did the Plaintiff relinquish its copyright ownership or give the Defendants the right to manufacture eyewear or marketing materials, nor was it contemplated in the drafting of the Agreement. In fact, it is clear, *prima facie*, that any and all copyright and trademark infringement claims fall far beyond the scope of the Agreement. The Agreement in this case has no operative effect; rather Plaintiff is relying on copyright and trademark principles that are applicable even if it had never entered into a contract with Defendants. In these circumstances, the Court should treat the infringement action no differently from any other infringement case in which the parties have not contracted together, and entertain this action here.

Defendants' citation of *Orange County Choppers v. Goen Technologies Corporation*, 374 F. Supp. 2d 372, 374 (S.D.N.Y. 2005) is distinguishable from this case.  In *Orange County Choppers*, the defendant's use of the plaintiff's marks to manufacture and sell items of clothing bearing the plaintiff's marks was held to be potentially within the scope of an agreement signed by both parties, which gave the defendant the right to "reproduce, copy, publish, broadcast, or otherwise use the name, picture or likeness" of the plaintiff. *Id.* at 373.  However, the Agreement here is a sales and distribution agreement which does not have a clause authorizing the defendants to reproduce any product or item bearing the plaintiff's name or marks.  Specifically, clause 8.2 states "The Buyer will *promote* the product only under the Producer's registered trademarks, trade names, logos, labels and other indications of source or origin as may be

13

determined by the Producer from time to time" (emphasis added). It does not provide defendants

the right to produce or reproduce anything with the plaintiff's marks.

Defendants also incorrectly rely upon *Kamakazi Music Corp v. Robbins Music Corp*, 684

F.2d 228 (2d Cir. 1982). Again the circumstances behind *Kamakazi* do not apply here. In

*Kamakazi*, the party who demanded arbitration, complained to the Court about the results. *Id*.

Furthermore, both parties in *Kamakazi* acquiesced in arbitration at the district court level. *See Id.*

Defendants' citation of *JVN Music v. Rodriguez*, 2000 WL 827702 (S.D.N.Y. 2000) is

also inapposite to the case at bar. In *JVN Music* there is an overlap between the contractual and

the statutory claims which are brought forth simultaneously to the court; thus the court could

hold that they arose in connection with each other. This is not the case herein. In this matter, the

only causes of action being claimed are based solely on copyright and trademark statutory law;

these are completely separate and distinguishable from contract claims, which are not brought

forth before this Court). In fact, there is no assertion of any contractual claim in this action.

Thus, Defendants are attempting to confuse the causes of action at bar with the causes of

action in the matter before the District Court of Tel Aviv-Jaffa. The case before this Court is not

a contract action and is thus not directly related to the Agreement signed by the parties. Rather,

the claims herein stem directly from the defendants' manufacturing, marketing and selling

counterfeit Ronit Furst eyewear in violation of plaintiff's United States intellectual property rights

and related claims.

14

## **CONCLUSION**

Plaintiff respectfully requests that the Court deny defendants' leave to make a motion to

compel arbitration.

Dated:　New York, New York
　　　　February 28, 2008

SHIBOLETH, YISRAELI, ROBERTS & ZISMAN, L.L.P.

*/s/ Shira Y. Rosenfeld*

By: _____

Shira Y. Rosenfeld  (SR 5392)
1 Penn Plaza, Suite 2527
New York, New York 10119
T: (212) 244-4111
F: (212) 563-7108

*Attorneys for Plaintiff*
